[Cite as *State v. Lechner*, 2019-Ohio-4071.]

IN THE COURT OF APPEALS OF OHIO
FOURTH APPELLATE DISTRICT
HIGHLAND COUNTY

| | | |
|---|---|---|
| STATE OF OHIO, | : | |
| | : | |
| Plaintiff-Appellee, | : | Case No. 19CA3 |
| | : | |
| vs. | : | |
| | : | DECISION AND |
| DENNIS WAYNE LECHNER, | : | JUDGMENT ENTRY |
| | : | |
| Defendant-Appellant. | : | |

_____
APPEARANCES:

James A. Anzelmo, Anzelmo Law, Gahanna, Ohio, for Appellant.

Anneka P. Collins, Highland County Prosecutor, Hillsboro, Ohio, for Appellee.
_____

Smith, P.J.

{¶1} Appellant, Dennis Lechner, appeals his conviction and sentence for

Felonious Assault, a second-degree felony in violation of R.C. 2903.11(A)(1).  On

appeal, he contends 1) that his speedy trial rights were violated in contravention of

the Sixth Amendment to the United States Constitution; 2) that the trial court erred

in finding that he was competent to stand trial; 3) that the trial court improperly

required him to prove self-defense; 4) that his conviction is based upon insufficient

evidence; 5) that his conviction is against the manifest weight of the evidence; and

6) that the trial court erred in imposing sentence upon him.  Because we have

found no merit to any of the assignments of error raised by Appellant, the decision of the trial court is affirmed.

## FACTS

{¶2} Appellant was charged with one count of felonious assault in violation of R.C. 2903.11 on August 25, 2017. The charge stemmed from an incident that occurred on August 17, 2017, at the residence of Lisa Garcia, Appellant's sister and victim herein. The affidavit filed in support of the criminal complaint alleged Garcia and her brother, Neil Hurt, got into a physical altercation when Garcia ordered Hurt and his girlfriend to leave her property. Immediately thereafter, when Garcia was having a conversation with her mother and daughter regarding the fact that Hurt and his girlfriend needed to leave her property, Garcia's other brother, Appellant, started yelling at her. The affidavit alleges that when Garcia ordered Appellant to leave and not return, Appellant struck her on the left side of her face. Garcia called the police and was taken to Highland District Hospital. She was thereafter transferred to Miami Valley Hospital for further treatment. The affidavit further alleged Garcia sustained a closed orbital fracture and closed maxillary sinus fracture.

{¶3} Appellant was not arrested on the charge until November 29, 2017. On December 12, 2017, Appellant filed a waiver of speedy trial time and also filed a motion to determine whether he was competent to stand trial. Appellant was

thereafter evaluated and determined incompetent to stand trial on January 10, 2018.

The matter was placed on the inactive docket and Appellant was institutionalized

for treatment until May 1, 2018, when all parties stipulated that he had been

returned to competency. Appellant thereafter waived his right to a preliminary

hearing and the matter was bound over to the grand jury.

{¶4} On June 5, 2018, Appellant was indicted on one count of felonious

assault, a second-degree felony in violation of R.C. 2903.11(A)(1). He pled not

guilty to the charge and the matter proceeded through the discovery process. Then,

on July 19, 2018, Appellant's trial counsel requested a second competency

evaluation. The trial court scheduled an evaluation and again placed the matter on

the inactive docket. A competency hearing was held on August 24, 2018, at which

time the trial court determined Appellant was both competent at the time he

committed the offense and was competent to stand trial. Shortly thereafter, on

September 20, 2018, Appellant filed a motion to dismiss based upon speedy trial

grounds. The trial court denied Appellant's motion on October 31, 2018, and the

matter proceeded to a jury trial on December 13, 2018.

{¶5} The victim, Lisa Garcia, and her daughter, Makenzie Beckelheimer,

both testified on behalf of the State. Garcia testified that Appellant hit her on the

left side of her face with a closed fist, causing her nose, eye and mouth to bleed.

Garcia also identified several medical records and photographs depicting her

injuries that were entered into evidence. She testified that she did not hit Appellant first or put her hands on him at all. She further testified that she still suffers from pain and headaches as a result of her injuries. Makenzie Beckelheimer testified she was present when her mother was assaulted by Appellant. She testified that Appellant punched her mother in the face. Melanie Nuse, a nurse practitioner with Miami Valley Emergency Specialists, also testified regarding Garcia's injuries and explained that the injuries suffered by Garcia are commonly suffered by someone who has been hit in the face.

{¶6} Appellant testified on his own behalf and claimed that Garcia pulled a gun on him, leading him to throw his hand back and causing the gun to hit her in the face. He denied striking Garcia. In response, the State called Garcia and Beckelheimer as rebuttal witnesses. Both denied Appellant's version of events and testified that Garcia did not have a gun at the time of the incident.

{¶7} The matter was submitted to the jury for deliberation and the jury instructions included an instruction on self-defense. The jury ultimately found Appellant guilty as charged. The trial court sentenced Appellant to a seven-year prison term. It is from the trial court's final judgment entry of confinement that Appellant now brings his timely appeal, setting forth six assignments of error for our review.

ASSIGNMENTS OF ERROR

I.    "LECHNER'S SPEEDY TRIAL RIGHTS WERE VIOLATED IN
      CONTRAVENTION OF THE SIXTH AMENDMENT TO THE UNITED
      STATES CONSTITUTION."

II.   "THE TRIAL COURT ERRED IN FINDING THAT LECHNER WAS
      COMPETENT TO STAND TRIAL, IN VIOLATION OF THIS [SIC] DUE
      PROCESS RIGHTS UNDER THE FIFTH AND FOURTEENTH
      AMENDMENTS TO THE UNITED  STATES CONSTITUTION."

III.  "THE TRIAL COURT IMPROPERLY REQUIRED LECHNER TO
      PROVE SELF-DEFENSE, IN VIOLATION OF THE SECOND, FIFTH
      AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
      CONSTITUTION."

IV.   "LECHNER'S CONVICTION IS BASED ON INSUFFICIENT
      EVIDENCE, IN VIOLATION OF THE DUE PROCESS CLAUSE OF THE
      FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED
      STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF
      THE OHIO CONSTITUTION."

V.    "LECHNER'S CONVICTION IS AGAINST THE MANIFEST WEIGHT
      OF THE EVIDENCE IN VIOLATION OF THE DUE PROCESS CLAUSE
      OF THE FIFTH AND FOURTEENTH AMENDMENTS TO THE UNITED
      STATES CONSTITUTION AND SECTIONS 10 & 16, ARTICLE I OF
      THE OHIO CONSTITUTION."

VI.   "THE TRIAL COURT ERRED WHEN IT SENTENCED LECHNER, IN
      VIOLATION OF HIS DUE PROCESS RIGHTS UNDER THE FIFTH
      AND FOURTEENTH AMENDMENTS TO THE UNITED STATES
      CONSTITUTION AND SECTION SIXTEEN, ARTICLE ONE OF THE
      OHIO CONSTITUTION."

ASSIGNMENT OF ERROR I

{¶8} In his first assignment of error, Appellant contends that his

constitutional right to a speedy trial was violated.  He argues that initial charges

were filed against him in August of 2017, but he was not brought to trial until over one year later in December of 2018. As a result, he contends he was presumptively prejudiced from the delay, and he argues the delay infringed upon his rights to a speedy trial. In response, the State notes that although charges were filed against Appellant on August 25, 2017, he was not arrested on the offense until November 29, 2017. The State also argues speedy trial time was extended by various tolling events, including Appellant's incompetency to stand trial for a period of time.

{¶9} A review of the record below indicates Appellant filed a motion to dismiss based upon speedy trial grounds prior to his scheduled trial, which was denied by the trial court. Appellate review of a trial court's decision on a motion to dismiss for a violation of the speedy trial requirements presents a mixed question of law and fact. *State v. James*, 4th Dist. Ross No. 13CA3393, 2014-Ohio-1702, ¶ 23; *State v. Brown*, 131 Ohio App.3d 387, 391, 722 N.E.2d 594 (4th Dist. 1998). Thus, appellate courts will defer to a trial court's findings of fact as long as competent, credible evidence supports them. *Brown* at 391. Appellate courts then independently determine whether the trial court properly applied the law to the facts. *Id.* "Furthermore, when reviewing the legal issues presented in a speedy trial claim, we must strictly construe the relevant statutes against the state." *Id.*, citing *Brecksville v. Cook*, 75 Ohio St.3d 53, 57, 661 N.E.2d 706 (1996). Here, the trial court filed a six-page decision denying Appellant's motion to dismiss, which

included findings of facts. The trial court's decision included an analysis of elapsed speedy trial days, taking into considering the triple count provision, as well as tolling events which extended speedy trial time. The trial court ultimately concluded one hundred forty-three days remained for speedy trial purposes at the time Appellant's motion to dismiss was filed. As such, the trial court denied the motion.

{¶10} Appellant now argues on appeal that his constitutional right to a speedy trial was violated. The Sixth Amendment to the United States Constitution guarantees an accused in a criminal prosecution the right to a speedy trial. The Due Process Clause of the Fourteenth Amendment makes this provision applicable to the states. *Klopfer v. North Carolina*, 386 U.S. 213, 87 S.Ct. 988, 18 L.Ed.2d 1 (1967). In analyzing whether an accused has been denied the constitutional right to a speedy trial, a court must consider four factors: (1) the length of the delay; (2) the reason for the delay; (3) the accused's assertion of his right; and (4) prejudice to the accused. *Barker v. Wingo*, 407 U.S. 514, 530, 92 S.Ct. 2182, 33 L.Ed.2d 101 (1972). None of these four factors is per se determinative of whether an accused suffered a violation of his constitutional right to a speedy trial. *Id*. at 532. Instead, the court must consider the factors collectively. *Id.*

{¶11} The United States Supreme Court has recognized that the first factor, length of the delay, involves a double inquiry. *Doggett v. United States*, 505 U.S.

647, 651, 112 S.Ct. 2686, 120 L.Ed.2d 520 (1992). First, an accused must show that the length of the delay was "presumptively prejudicial" in order to trigger the *Barker* analysis. *Id.* at 651–52. Once the *Barker* analysis is triggered, length of delay beyond the initial threshold showing is again considered and balanced against the other relevant factors. *Id.* at 652.

{¶12} Here, a complaint was initially filed in the Hillsboro Municipal Court charging Appellant with felonious assault on August 25, 2017. Amended complaints were thereafter filed on August 31, 2017 and September 11, 2017. However, Appellant was not arrested on that charge until November 29, 2017, and he was not brought to trial until December 13, 2018. As noted by this Court in *State v. Spencer*, 2017-Ohio-456, 84 N.E.3d 106, ¶ 3 " 'courts generally find post-accusation delay to be 'presumptively prejudicial' as it approaches one year.' " Quoting *Doggett* at fn. 1. As a result, we find the sixteen-month delay between the filing of the criminal complaint and trial was presumptively prejudicial and that it triggers the *Barker* analysis.

{¶13} We begin that analysis by examining the first factor, which considers the length of the delay, as well as the second factor, which considers the reason for the delay. In considering these factors, we observe that R.C. 2945.71 governs the time within which the state must bring a defendant to trial. Under R.C. 2945.71(C)(2), a person charged with a felony offense must be brought to trial

within 270 days *after the person's arrest*.  Here, as noted above, Appellant was not actually arrested until November 29, 2017.  Thus, November 29, 2017 started the running of the speedy trial clock.  Further, R.C. 2945.72 provides that the time within which an accused charged with a felony must be brought to trial may be extended by the following:

(A) Any period during which the accused is unavailable for hearing or trial, by reason of other criminal proceedings against him, within or outside the state, by reason of his confinement in another state, or by reason of the pendency of extradition proceedings, provided that the prosecution exercises reasonable diligence to secure his availability;

*(B) Any period during which the accused is mentally incompetent to stand trial or during which his mental competence to stand trial is being determined, or any period during which the accused is physically incapable of standing trial*;

(C) Any period of delay necessitated by the accused's lack of counsel, provided that such delay is not occasioned by any lack of diligence in providing counsel to an indigent accused upon his request as required by law;

(D) Any period of delay occasioned by the neglect or improper act of the accused;

*(E) Any period of delay necessitated by reason of a plea in bar or abatement, motion, proceeding, or action made or instituted by the accused;*

(F) Any period of delay necessitated by a removal or change of venue pursuant to law;

(G) Any period during which trial is stayed pursuant to an express statutory requirement, or pursuant to an order of another court competent to issue such order;

(H) The period of any continuance granted on the accused's own motion, and the period of any reasonable continuance granted other than upon the accused's own motion;

(I) Any period during which an appeal filed pursuant to section 2945.67 of the Revised Code is pending. (Emphasis added).

{¶14} A review of the record reveals that on December 12, 2017, just thirteen days after Appellant was arrested, he filed a motion for a competency evaluation. The filing of that motion tolled the speedy trial clock in accordance with R.C. 2945.72(B) and (E) until January 2, 2018 when the trial court ordered a competency evaluation. Time was further tolled from January 2, 2017 until January 10, 2018 when the trial court determined Appellant was incompetent to stand trial and placed the case on the inactive docket. Time continued to be tolled

until May 1, 2018 when Appellant was returned to competency. Further, Appellant filed another motion to determine his competency on July 19, 2018. As a result, the trial court ordered a second competency evaluation and again placed the case on the inactive docket. The case was returned to the active docket on August 24, 2018 because Appellant was determined to be competent at that time.

{¶15} Thus, although there was a sixteen-month delay between the filing of the initial complaint and trial, speedy trial time did not begin to run until November 29, 2017 when Appellant was arrested. Additionally, during the thirteen months between Appellant's arrest and trial, Appellant was incompetent and institutionalized for four months and then was evaluated for competency a second time, which tolled time for an additional month. In total, five of the thirteen months at issue were tolled by Appellant's motions to determine his competency and by his period of incompetency. Further, Appellant filed other motions which tolled speedy trial time, including a request for discovery, a request for a bill of particulars and eventually a motion to dismiss based upon speedy trial grounds. Appellant's motion to dismiss based upon speedy trial grounds was filed on September 20, 2018 and tolled speedy trial time for another month until it was ruled upon on October 31, 2018.

{¶16} Subtracting those six months from the thirteen-month total, it appears only seven months should have been counted against the State for speedy trial

purposes.  Considering only thirteen of these days invoked the triple count provision, Appellant was brought to trial well within the 270 days permitted in R.C. 2945.71, and in less than one year from a constitutional speedy trial standpoint.  As such, although Appellant has shown the length of the delay here was presumptively prejudicial as it exceeded one year, we believe the second factor of the *Barker* analysis, which considers the reason for the delay, mitigates in favor of the State.

{¶17} We now move on to a consideration of the third and fourth factors. The third factor involves an analysis of Appellant's assertion of his right.  We initially note that the bulk of the delay was attributable to Appellant's incompetency, which was challenged by Appellant himself, and which accounted for five months of the thirteen-month delay between his arrest and trial.  Further, and importantly, it appears from the record that Appellant executed a waiver of time on December 12, 2017.

{¶18} It is well-settled law that an accused may waive his right to a speedy trial.  *State v. King*, 70 Ohio St.3d 158, 160, 637 N.E.2d 903 (1994).  As further observed by the Court in *King*:

> Consistent with this principle, this court has found the statutory
> speedy trial provisions set forth in R.C. 2945.71 to be coextensive
> with constitutional speedy trial provisions.  *State v. O'Brien* (1987),

34 Ohio St.3d 7, 516 N.E.2d 218.  Thus, we have held that an accused's express written waiver of his statutory rights to a speedy trial, made knowingly and voluntarily, also constitutes a waiver of his speedy trial rights guaranteed by the United States and Ohio Constitutions. *Id.*

{¶19} Additionally, the waiver executed by Appellant did not specify an end date.  Furthermore, as explained in *State v. Bray*, 9th Dist. Lorain No. 03CA008241, 2004-Ohio-1067, ¶ 8, "[a] waiver may be limited or unlimited in duration."  The *Bray* court went on to explain as follows:

"[A] waiver that expressly waives the accused's right to a speedy trial under the statute without mentioning a specific time period is unlimited in duration." *State v. Kovacek* (May 30, 2001), 9th Dist. No. 00CA007713 [2001 WL 577664], citing *O'Brien*, 34 Ohio St.3d 7, 516 N.E.2d 218 at paragraph two of the syllabus. *See also State v. Smith* (Dec. 22, 1999), 9th Dist. No. 98CA007144 [1999 WL 1260872], citing *In re Fuller* (Dec. 14, 1994), 9th Dist. No. 16824 [1994 WL 700086] (finding that "in the absence of a clearly articulated specific period of time, a waiver is of unlimited duration"); *State v. Lee* (Apr. 13, 1994), 9th Dist. No. 93CA005671 [1994 WL 122337] (rejecting defendant's argument that a waiver, not specifying

a limited time frame, was only a waiver for the period of time from the date of the waiver to the originally scheduled date for trial). Furthermore, when a waiver fails to include a specific date as the starting point for the tolling of time, the waiver is deemed to be effective from the date of arrest. *State v. Harris* (Oct. 30, 1996), 9th Dist. No. 95CA006275 [1996 WL 625222], citing *State v. Baugh* (Jan. 31, 1996), 9th Dist. No. 95CA006124 [1996 WL 37726]. Once an accused has executed an express, written waiver of unlimited duration, "the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time." *O'Brien*, 34 Ohio St.3d 7, 516 N.E.2d 218 at paragraph two of the syllabus. *Id.*

{¶20} These principles were more recently reaffirmed in *State v. Miller*, 2017-Ohio-5728, 94 N.E.3d 980 (5th Dist. 2017), where the court noted that a speedy trial waiver that does not mention a specific time period is unlimited in duration, and found that the waiver at issue was unlimited despite assertions to the contrary by the appellant. *See also State v. Maisch*, 173 Ohio App.3d 724, 2007-Ohio-6230, 880 N.E.2d 153, ¶ 28 (rejecting an argument a time waiver "to allow his counsel opportunity to prepare for trial" is qualifying language limiting the

duration of a waiver because there was no specific period of duration of the waiver). Here, the time waiver executed by Appellant specified no end date and was never revoked. Moreover, Appellant filed no formal written objection or demand for trial. As explained by the *O'Brien* Court in paragraph two of the syllabus:

> Following an express, written waiver of unlimited duration by an accused of his right to a speedy trial, the accused is not entitled to a discharge for delay in bringing him to trial unless the accused files a formal written objection and demand for trial, following which the state must bring the accused to trial within a reasonable time.

The *O'Brien* Court reasoned that a trial court may reasonably rely upon a written waiver of speedy trial in the exercise of its duty of scheduling trials, and that a defendant is required to inform the court of an objection to a further continuance and reassertion of the defendant's right to a speedy trial. *Id*. at 9–10. Here, in light of the fact that Appellant filed a waiver of time of unlimited duration which he never revoked, as well as the fact that he failed to file a formal, written objection or demand for trial, we find that the third factor of the *Barker* test mitigates in favor of the State.

{¶21} Finally, the fourth factor involves an analysis of the prejudice to the accused. In *Barker*, the United States Supreme Court identified three interests that

the speedy trial right is designed to protect: "(i) to prevent oppressive pretrial incarceration; (ii) to minimize anxiety and concern of the accused; and (iii) to limit the possibility that the defense will be impaired." *Barker, supra*, at 532. Here, Appellant was incarcerated for only thirteen days between the date of his arrest and trial. Thus, there was no concern of oppressive pretrial incarceration here. Further, Appellant has failed to make any argument regarding anxiety, concern or prejudice that occurred as a result of the post-accusation delay. Aside from arguing he was presumptively prejudiced by the delay, he claims no actual prejudice. As such, the fourth *Barker* factor also mitigates in favor of the State.

{¶22} To summarize, we have concluded that all four *Barker* factors mitigate in favor of the State and that Appellant has failed to demonstrate any actual prejudice resulted from the post-accusation delay in bringing him to trial. Considering the totality of the circumstances, Appellant has failed to demonstrate a violation of his Sixth Amendment speedy trial rights. Accordingly, his second first assignment of error is overruled.

## ASSIGNMENT OF ERROR II

{¶23} In his second assignment of error Appellant contends the trial court erred in finding that he was competent to stand trial. Appellant argues there was no basis for the trial court to find he was competent to stand trial in light of his history of mental illness, which is so severe that he believed his name is Cane and

that he is the prince of England. However, as will be explained in detail below, because Appellant failed to ensure that the written physician reports regarding the competency evaluations were filed and made part of the record for purposes of appeal, our review is very limited. Further, for the following reasons, we cannot find the trial court abused its discretion in determining Appellant was competent to stand trial, and competent at the time the offense was committed.

{¶24} A trial court's decision on competency will not be disturbed absent an abuse of discretion. *State v. Clark*, 71 Ohio St.3d 466, 469, 1994–Ohio–43, 644 N.E.2d 331. An "abuse of discretion" requires more than an error of judgment; it implies the court's attitude is unreasonable, arbitrary or unconscionable. *Id.* at 470. Thus, an appellate court will not disturb the trial court's competency determination if the record contains "some reliable, credible evidence supporting the trial court's conclusion that appellant understood the nature and objective of the proceedings against him." *State v. Williams*, 23 Ohio St.3d 16, 19, 490 N.E.2d 906 (1986); *State v. Stewart*, 4th Dist. Gallia No. 91CA24, 1992 WL 174699, *3 (July 22, 1992).

{¶25} Due process requires a criminal defendant be competent to stand trial. *State v. Berry*, 72 Ohio St.3d 354, 359, 1995–Ohio–310, 650 N.E.2d 433. "It has long been accepted that a person who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in

preparing his defense may not be subjected to a trial." *Drope v. Missouri*, 420 U.S. 162, 171, 95 S.Ct. 896, 43 L.Ed.2d 103 (1975). Thus, "[c]onviction of an accused while he or she is legally incompetent is a violation of due process." *State v. Merryman,* 4th Dist. Athens No. 12CA28, 2013-Ohio-4810, ¶ 14.

{¶26} The United States Supreme Court established the test for competency and requires the court to determine if an accused "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding - and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789, 4 L.Ed.2d 824 (1960). Ohio has codified the competency test:

> A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

R.C. 2945.37(G).

{¶27} Under this subjective test, if a defendant is capable of understanding the nature and objective of the proceedings and assisting in the defense, then the defendant is competent to stand trial. A defendant with mental illness or intellectual deficiencies may still be competent to stand trial. "Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel." *State v. Bock*, 28 Ohio St.3d 108, 110, 502 N.E.2d 1016 (1986).

{¶28} Here, our review of the record indicates that the issue of Appellant's competency was raised two different times in this matter. It was first raised in the municipal court shortly after Appellant's arrest. It was raised a second time in the common pleas court. Appellant requested that all of the common pleas court hearing transcripts be transmitted to this Court for purposes of appeal. However, although the municipal court record was transmitted to us, Appellant did not request the municipal court hearing transcripts be transmitted to us. As such, we have no ability to review the municipal court's initial finding on January 10, 2018 that Appellant was incompetent. Nor can we review the municipal court's May 1, 2018 determination that Appellant had been restored to competency. [1]

---

[1] Not only was the transcript of this competency hearing not requested by Appellant or transmitted on appeal, the written report of the competency evaluation referenced in the trial court's January 10, 2018 entry was not filed or otherwise made a part of the record below. Further, the subsequent report from the Twin Valley Behavioral Center

{¶29} " '[I]t is the appellant's duty to transmit the [record] to the court of appeals. * * * This duty falls to the appellant because the appellant has the burden of establishing error in the trial court.' " *State v. Crawford*, 4th Dist. Scioto No. 16CA3778, 2018-Ohio-2166, ¶ 12, quoting *State v. Bailey*, 4th Dist. Scioto No. 09CA3287, 2010-Ohio-2239, ¶ 57, citing *State v. Dalton*, 9th Dist. Lorain No. 09CA009589, 2009-Ohio-6910, ¶ 2, in turn citing *Knapp v. Edwards Laboratories*, 61 Ohio St.2d 197, 199, 400 N.E.2d 384 (1980) (internal citations omitted). Because Appellant has not provided us with the hearing transcripts or expert reports necessary to review his first determination of incompetency and restoration to competency, we must presume the regularity and validity of the proceedings below as to Appellant's competency determination. *Crawford* at ¶ 13.

{¶30} As indicated above, the issue of Appellant's competency was subsequently raised a second time at the common pleas court level. The record indicates that Appellant's counsel filed a Motion for a Psychiatric Evaluation Pursuant to R.C. 2945.371 on July 19, 2018, requesting a determination of his competence to stand trial, as well as his mental condition at the time of the commission of the offense. As a result, on July 24, 2018, the trial court issued two orders directing the requested evaluations be performed. The trial court issued a

---

referenced in the court's May 1, 2018 order finding Appellant had been restored to competency was not filed or made part of the record. Thus, they are not part of our review on appeal.

third order placing the matter on the inactive docket pending evaluation results.  A hearing on the evaluations was held on August 24, 2018.  A transcript of that hearing is properly before this Court for review.  According to the transcript, however, no witnesses were called at the evaluation hearing.  Instead, the psychological report of psychologist, Dr. Joy McGhee was "filed" and "referenced by the court."  Although the hearing transcript indicates that a copy of the report had been provided to the court and counsel, the report was not admitted as an exhibit and does not appear to have been filed or made part of the record.

{¶31} The hearing transcript indicates that the trial court found Appellant competent to stand trial and that there was no basis for a plea of not guilty by reason of insanity based upon the evaluation from Dr. McGhee.  No other testimony or evidence was presented at the hearing.  As the trial court's decision appears to have been based solely upon the evaluation by Dr. McGhee, and because that evaluation was not made part of the record for purposes of appeal, we again must presume the regularity and validity of the proceedings below as to Appellant's competency determination.

{¶32} Further, as the trier of fact, the trial court was in the position to determine the credibility of the expert witness.  The weight to be given the evidence and the credibility of the witnesses are primarily for the trial court as the trier of fact.  *State v. Stewart*, *supra*, at *3, citing *State v. DeHass*, 10 Ohio St.2d

230, 227 N.E.2d 212 (1967). The adequacy of the "data relied upon by the expert who examined [the defendant] is a question for the trier of fact." *Id.* "Deference on these issues should be given 'to those who see and hear what goes on in the courtroom.' " *State v. Were*, 118 Ohio St.3d 448, 2008–Ohio–2762, 890 N.E.2d 263, quoting *State v. Cowans*, 87 Ohio St.3d 68, 84, 1999–Ohio–250, 717 N.E.2d 298 (1999).

{¶33} Moreover, what is available for this Court's review indicates the trial court handled Appellant's competency determination properly and in accordance with the controlling statutes. For instance, when the issue of Appellant's competency was raised, the trial court ordered a competency evaluation in accordance with R.C. 2945.371 and held a competency hearing in accordance with R.C. 2945.37. Further, once the trial court found Appellant was competent to stand trial, the matter proceeded to trial in accordance with R.C. 2945.38. As such, we conclude the trial court's finding of competency was made after holding a hearing on the matter and was based on a medical report from Appellant's evaluating physician that was introduced by the State, without objection or rebuttal by Appellant. Based upon our limited review, it appears the record contains reliable and credible evidence to support the trial court's decision that Appellant was competent to stand trial. Thus, we cannot find the trial court abused its discretion in determining Appellant was competent at the time the offense was

committed and that he was also competent to stand trial.  Accordingly, we overrule

Appellant's second assignment of error.

## ASSIGNMENT OF ERROR III

{¶34} In his third assignment of error Appellant contends the trial court

improperly required him to prove self-defense.  The State contends the trial court

properly placed the burden on Appellant to prove self-defense by a preponderance

of the evidence.  For the reasons that follow, we agree with the State.

{¶35} R.C. 2901.05 is Ohio's self-defense statute.  The version of the statute

that was in effect both at the time of the commission of the offense and at the time

of Appellant's trial provided, in pertinent part, as follows in section (A):  " * * *

The burden of going forward with the evidence of an affirmative defense, and the

burden of proof, by a preponderance of the evidence, for an affirmative defense, is

upon the accused."  Both parties note that Ohio's self-defense statute was revised,

effective March 28, 2019, and that the revision in effect shifted the burden to the

prosecution to prove beyond a reasonable doubt that the accused person did not act

in self-defense.  The revised version of the statute provides, in pertinent part, as

follows:

(A)  * * * The burden of going forward with the evidence of an

affirmative defense, and the burden of proof, by a preponderance of

the evidence, for an affirmative defense other than self-defense,

defense of another, or defense of the accused's residence as described in division (B)(1) of this section, is upon the accused.

(B)(1) A person is allowed to act in self-defense, defense of another, or defense of that person's residence. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, defense of another, or defense of that person's residence, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be.

{¶36} Appellant concedes that the revised version of the statute had not gone into effect at the time he committed his offense or at the time of his trial. Appellant also notes that the United States Supreme Court upheld the constitutionality of the applicable version of R.C. 2901.05 in *Martin v. Ohio*, 480 U.S.228, 107 S.Ct. 1098, 94 L.Ed.2d 267 (1987). Nonetheless, Appellant argues that it is "incongruous" and "unconstitutional" to require a defendant to prove self-defense in light of the holding of *Dist. of Columbia v. Heller*, 554 U.S. 570, 128 S.Ct. 2783, 171 L.Ed.2d 637 (2008), as *Heller* "recognized that the right of self-

defense is paramount to individuals in society and is well engrained in the federal constitution."

{¶37} At issue in *Heller* was "whether a District of Columbia prohibition on the possession of usable handguns in the home violate[d] the Second Amendment to the Constitution. *Heller* at 573. Although the *Heller* court holding recognized the importance of the Second Amendment right to keep and bear arms, especially for "the core lawful purpose of self-defense," and ultimately concluded the District of Columbia's prohibition was unconstitutional, the Court did not speak to the burden being upon the accused to prove the affirmative defense of self-defense. *Id.* at paragraph three of the syllabus. Thus, we find Appellant's reliance upon *Heller* for an argument that the applicable version of Ohio's self-defense statute was unconstitutional to be misplaced.

{¶38} The trial transcript indicates the trial court properly instructed the jury that the burden of going forward with evidence on the affirmative defense of self-defense was upon Appellant and that such defense must be established by a preponderance of the evidence. This instruction was in accordance with the version of R.C. 2901.05 that was in effect at the time, and which had previously been deemed constitutional. As such, we find no merit to Appellant's third assignment of error and it is hereby overruled.

ASSIGNMENTS OF ERROR IV AND V

{¶39} We address Appellant's fourth and fifth assignments of error in conjunction with one another for ease of analysis. In his fourth assignment of error Appellant contends his conviction is based upon insufficient evidence. In his fifth assignment of error he contends his conviction is against the manifest weight of the evidence. Both of these assignments of error are limited to an argument that Appellant was acting in self-defense. The State responds that the jury heard and considered Appellant's version of events, but believed the State's witnesses instead.

{¶40} "When an appellate court concludes that the weight of the evidence supports a defendant's conviction, this conclusion necessarily includes a finding that sufficient evidence supports the conviction." *State v. Puckett*, 191 Ohio App.3d 747, 2010–Ohio–6597, 947 N.E.2d 730, ¶ 34, citing *State v. Pollitt*, 4th Dist. Scioto No. 08CA3263, 2010–Ohio–2556 ¶ 15. " ' "Thus, a determination that [a] conviction is supported by the weight of the evidence will also be dispositive of the issue of sufficiency." ' " *Puckett* at ¶ 34, quoting *State v. Lombardi*, 9th Dist. Summit No. 22435, 2005–Ohio–4942, ¶ 9, in turn quoting *State v. Roberts*, 9th Dist. Lorain No. 96CA006462, 1997 WL 600669 (Sept. 17, 1997). Therefore, we first consider whether Appellant's convictions were against the manifest weight of the evidence.

{¶41} "In determining whether a criminal conviction is against the manifest weight of the evidence, an appellate court must review the entire record, weigh the evidence and all reasonable inferences, consider the credibility of witnesses and determine whether, in resolving conflicts in the evidence, the trier of fact clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed." *State v. Brown*, 4th Dist. Athens No. 09CA3, 2009–Ohio–5390, ¶ 24, citing *State v. Thompkins*, 78 Ohio St.3d 380, 387, 678 N.E.2d 541. A reviewing court "may not reverse a conviction when there is substantial evidence upon which the trial court could reasonably conclude that all elements of the offense have been proven beyond a reasonable doubt." *State v. Johnson*, 58 Ohio St.3d 40, 42, 567 N.E.2d 266 (1991), citing *State v. Eskridge*, 38 Ohio St.3d 56, 526 N.E.2d 304, paragraph two of the syllabus (1988).

{¶42} Even in acting as a thirteenth juror we must still remember that the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, 73 Ohio St.3d 323, 339, 652 N.E.2d 1000 (1995), citing *State v. Grant*, 67 Ohio St.3d 465, 477, 620 N.E.2d 50 (1993). The fact finder "is best able to view the witnesses and observe their demeanor, gestures, and voice inflections, and use these observations in weighing the credibility of the proffered testimony." *Seasons Coal Co. v. Cleveland*, 10 Ohio St.3d 77, 80, 461 N.E.2d 1273 (1984) (per curiam). Thus, we will only

interfere if the fact finder clearly lost its way and created a manifest miscarriage of justice. Moreover, "[t]o reverse a judgment of a trial court on the weight of the evidence, when the judgment results from a trial by jury, a unanimous concurrence of all three judges on the court of appeals panel reviewing the case is required." *Thompkins* at paragraph four of the syllabus, construing and applying Section 3(B)(3), Article IV of the Ohio Constitution.

{¶43} Appellant raises a somewhat limited argument. He does not contend the State failed to prove any of the elements of felonious assault beyond a reasonable doubt. Instead, he simply argues that his "conviction for felonious assault cannot stand because he acted in self-defense." Appellant argues that state of mind is a crucial element of self-defense and that he became frightened when the victim "pulled a gun" on him. He argues that the victim pulling a gun, coupled with his history of mental illness, "caused him to throw his hand up toward the gun[,] resulting in the gun striking the victim in the face.

{¶44} "Self-defense is an affirmative defense that, if proved, relieves a defendant of criminal liability for the force that the defendant used." *State v. Kozlosky*, 195 Ohio App.3d 343, 2011–Ohio–4814, 959 N.E.2d 1097, ¶ 22. " 'The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused.' " *State v. Nucklos*, 121 Ohio St.3d 332, 2009–Ohio–792, 904

N.E.2d 512, ¶ 7; quoting R.C. 2901.05(A).  We observe that affirmative defenses such as self-defense " 'do not seek to negate any of the elements of the offense which the State is required to prove' but rather they 'admit[ ] the facts claimed by the prosecution and then rel[y] on independent facts or circumstances which the defendant claims exempt him from liability.' "  *State v. Smith*, 3d Dist. Logan No. 8–12–05, 2013–Ohio–746, ¶ 32; quoting *State v. Martin*, 21 Ohio St.3d 91, 94, 488 N.E.2d 166 (1986).

{¶45} To establish self-defense, a defendant must establish, by a preponderance of the evidence, the following three circumstances:

"(1) the defendant was not at fault in creating the violent situation, (2) the defendant had a bona fide belief that she was in imminent danger of death or great bodily harm and that her only means of escape was the use of force, and (3) that the defendant did not violate any duty to retreat or avoid the danger."  *State v. Goff*, 128 Ohio St.3d 169, 2010– Ohio–6317, 942 N.E.2d 1075, ¶ 36; quoting *State v. Thomas*, 77 Ohio St.3d 323, 326, 673 N.E.2d 1339 (1997).

The "elements of self-defense are cumulative. * * * [Thus, i]f the defendant fails to prove *any one* of these elements by a preponderance of the evidence he has failed to demonstrate that he acted in self-defense."  *State v. Jackson*, 22 Ohio St.3d 281, 284, 490 N.E.2d 893 (1986).  *Accord State v. Cassano*, 96 Ohio St.3d 94, 2002–

Ohio–3751, 772 N.E.2d 81, ¶ 73; *State v. Hargrave*, 4th Dist. Adams No. 11CA907, 2012–Ohio–798, ¶ 16.

{¶46} Here, aside from simply arguing he acted in self-defense, Appellant has failed to address the three circumstances concerning self-defense set forth above. Further, the jury heard both the victim's and Appellant's version of events. The victim testified that Appellant punched her in the face, causing her injuries. The victim's daughter also testified and corroborated the victim's testimony. Both the victim and her daughter denied she had a gun. The medical records entered into evidence all described the cause of the victim's injuries as being the result of being punched in the face by her brother. Additionally, the physician's assistant who attended the victim in the emergency room testified that Appellant sustained "maxillofacial facial fractures from an assault," as well an "orbital fracture." She said such an injury is "commonly suffered from someone who gets hit in the face." Appellant, on the other hand, testified that the victim pulled a gun on him and that he essentially backhanded her so he could get away from her and get out the door.

{¶47} As we have already explained, the weight to be given evidence and the credibility to be afforded testimony are issues to be determined by the trier of fact. *State v. Frazier*, *supra*, at 339, citing *State v. Grant*, at 477. The jury, as the trier of fact, is free to accept or to reject any and all of the evidence and to assess witness credibility. Further, a verdict is not against the manifest weight of the

evidence simply because the factfinder opts to believe the State's witnesses. *State v. Brooks*, 4th Dist. Ross No. 15CA3490, 2016-Ohio-3003, ¶ 32, citing, e.g., *State v. Chancey*, 4th Dist. Washington No. 15CA17, 2015-Ohio-5585, ¶ 36, citing *State v. Wilson*, 9th Dist. Lorain No. 12CA010263, 2014-Ohio-3182, ¶ 24, citing *State v. Martinez*, 9th Dist. Wayne No. 12CA0054, 2013-Ohio-3189, ¶ 16. A factfinder is free to believe all, part, or none of a witness's testimony. *Brooks* at ¶ 32, citing *State v. Scott*, 4th Dist. Washington No. 15CA2, 2015-Ohio-4170, ¶ 25; *State v. Jenkins*, 4th Dist. Ross No. 13CA3413, 2014-Ohio-3123, ¶ 37. Thus, in the case sub judice, the jury, after hearing and observing the witnesses, obviously found the testimony of the State's witnesses credible. "It is not our job to second-guess the jury where there is evidence from which it could reach a guilty verdict; we must defer to the jury's credibility and weight determinations." *State v. Burris*, 4th Dist. Athens No. 16CA7, 2017-Ohio-454, ¶ 31. Furthermore, we cannot conclude this is an " 'exceptional case in which the evidence weighs heavily against the conviction.' " *Thompkins*, *supra*, at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (1st Dist. 1983).

{¶48} As such, after reviewing the entire record, we cannot say that the jury lost its way or created a manifest miscarriage of justice when it found Appellant guilty of felonious assault and, in doing so, rejected Appellant's affirmative defense of self-defense. Accordingly, we find that Appellant's conviction was not

against the manifest weight of the evidence. Thus, we necessarily also conclude that sufficient evidence supports his conviction. We therefore overrule Appellant's fourth and fifth assignments of error.

## ASSIGNMENT OF ERROR VI

{¶49} In his sixth assignment of error Appellant contends the trial court erred in sentencing him. More specifically, Appellant contends the record supports an argument community control would have been more appropriate than a seven-year prison term and, as such, he was sentenced in contravention of the sentencing statutes. The State responds by noting that a seven-year prison term was imposed by the trial court after it properly considered the statutory sentencing factors, as well as Appellant's criminal history and "long history of violence." Thus, the State contends the sentence imposed by the trial court was proper.

{¶50} When reviewing felony sentences, appellate courts must apply the standard of review set forth in R.C. 2953.08(G)(2). *State v. Marcum*, 146 Ohio St.3d 516, 2016-Ohio-1002, 59 N.E.3d 1231, ¶1, 22-23. Under R.C. 2953.08(G)(2), "[t]he appellate court's standard for review is not whether the sentencing court abused its discretion." Instead, R.C. 2953.08(G)(2) provides that an appellate court may increase, reduce, modify, or vacate and remand a challenged felony sentence if the court clearly and convincingly finds either:

(a) That the record does not support the sentencing court's findings

under division (B) or (D) of section 2929.13, division (B)(2)(e) or

(C)(4) of section 2929.14, or division (I) of section 2929.20 of the

Revised Code, whichever, if any, is relevant;

(b) That the sentence is otherwise contrary to law.

{¶51} Although R.C. 2953.08(G)(2)(a) does not mention R.C. 2929.11 and

2929.12, the Supreme Court of Ohio has determined that the same standard of

review applies to those statutes. *Marcum* at ¶ 23 (although "some sentences do not

require the findings that R.C. 2953.08(G)(2)(a) specifically addresses[,] * * * it is

fully consistent for appellate courts to review those sentences that are imposed

solely after consideration of the factors in R.C. 2929.11 and 2929.12 under a

standard that is equally deferential to the sentencing court"); *State v. Butcher*, 4th

Dist. Athens Nos. 15CA33, 15CA34, 2017-Ohio-1544, ¶ 84. Consequently, "an

appellate court may vacate or modify any sentence that is not clearly and

convincingly contrary to law only if the appellate court finds by clear and

convincing evidence that the record does not support the sentence." *Marcum* at

¶ 23; *Butcher* at ¶ 84.

{¶52} "Once the trial court considers R.C. 2929.11 and 2929.12, the burden

is on the defendant to demonstrate by clear and convincing evidence that the record

does not support his sentence." *State v. Akins-Daniels*, 8th Dist. Cuyahoga No.

103817, 2016-Ohio-7048, ¶ 9; *State v. O'Neill*, 3rd Dist. Allen No. 1-09-27, 2009-Ohio-6156, fn. 1. "Clear and convincing evidence is 'that measure or degree of proof which is more than a mere "preponderance of the evidence," but not to the extent of such certainty as is required "beyond a reasonable doubt" in criminal cases, and which will produce in the mind of the trier of facts a firm belief or conviction as to the facts sought to be established.' " *State ex rel. Husted v. Brunner*, 123 Ohio St.3d 288, 2009-Ohio-5327, 915 N.E.2d 1215, ¶ 18; quoting *Cross v. Ledford*, 161 Ohio St. 469, 120 N.E.2d 118, paragraph three of the syllabus (1954).

{¶53} We initially conclude that Appellant's sentence is not clearly and convincingly contrary to law. The trial court imposed a seven-year prison term for a second-degree felony, which provides for a range of two to seven years in prison, along with a presumption of prison. Thus, the sentence imposed by the trial court was provided for by statute. Further, Appellant does not argue that his sentence is contrary to law. Instead, as set forth above, Appellant essentially argues his sentence is not supported by the record because the trial court did not take into consideration or properly weigh certain mitigating factors. For instance, Appellant argues he should have been sentenced to community control rather than prison because 1) the victim induced the offense; 2) he acted under strong provocation in committing the offense; 3) his mental illness provides substantial grounds to

mitigate his conduct; and 4) his healthcare providers indicate community control rather than prison would be best for him.

{¶54} Here, the trial court considered all of the evidence before it, including the information contained in the pre-sentence investigation, and ultimately weighed the seriousness and recidivism and other sentencing factors in favor of a prison term rather than community control. Appellant's criminal history includes three prior felony assault convictions as well as multiple misdemeanor offenses of violence, including criminal damaging, discharge of a firearm in the city, assault and aggravated menacing. As to Appellant's argument that he should have been sentenced to community control rather than prison because the victim induced the offense, we note that the jury rejected Appellant's self-defense argument. Furthermore, we have determined on appeal that Appellant's conviction for felonious assault was supported by sufficient evidence and was not against the manifest weight of the evidence, despite Appellant's self-defense argument.

{¶55} Furthermore, we reject Appellant's argument that he should have been sentenced to community control because he acted under strong provocation in light of the fact that he failed to argue this theory at trial. As discussed above, Appellant asserted he acted in self-defense, not under strong provocation. An argument that he acted under strong provocation is simply not supported by the record. Next, we find no merit to Appellant's argument that his mental illness

provides substantial grounds to mitigate his conduct. Appellant's competency at the time the offense was committed was evaluated by a physician at Appellant's request. An expert report was provided to the trial court indicating Appellant was competent at the time he committed the offense at issue. As such, the trial court was not required to consider Appellant's mental illness as a mitigating factor with respect to sentencing.

{¶56} Finally, Appellant argues his healthcare providers indicated community control, rather than prison, would be best for him. A review of the sentencing hearing transcript reveals that Appellant's trial counsel made the court aware of two letters from psychologists at Scioto Paint Valley apparently indicating treatment would be the "best course of action" for Appellant. However, these letters were not made a part of the record and are not before us on appeal. Further, in imposing sentence, the trial court stated there was "no question" that Appellant had "mental health problems," but the court also noted that the "problem" was Appellant's "long history of violence." The court addressed Appellant on the record as follows:

> But, you know, you've got a history of violence; you're not
>
> controlling your temper; your reaction seems too [sic] be if something
>
> upsets you that you, uh, you just lash out and start beating on people.

And it's necessary, I think, to protect the public to insure that you

don't do this to other persons that you be incarcerated.

Thus, the trial court took into consideration Appellant's mental illness and appeared to be aware of the contents of two letters from Appellant's healthcare providers, but nevertheless, after weighing the seriousness and recidivism factors, as well as the need to protect the public, the trial court rejected Appellant's request for community control in favor of imposing a prison term.

{¶57} Ultimately, it has been determined that Appellant's conviction for felonious assault was not against the manifest weight of the evidence, and that Appellant did not act in self-defense. Further, despite Appellant's assertions to the contrary, he was determined competent at the time he committed the offense. Thus, based upon the record before us, we cannot conclude that the trial court failed to properly consider or analyze the seriousness and recidivism factors, or that Appellant's sentence was not supported by the record. As a result, we find no merit to Appellant's sixth assignment of error and it is, therefore, overruled.

{¶58} Having considered all of Appellant's assignments of error, and having found no merit to them, we hereby affirm the decision of the trial court.

**JUDGMENT AFFIRMED.**

## JUDGMENT ENTRY

It is ordered that the JUDGMENT BE AFFIRMED and costs be assessed to Appellant.

The Court finds there were reasonable grounds for this appeal.

It is ordered that a special mandate issue out of this Court directing the Highland County Common Pleas Court to carry this judgment into execution.

IF A STAY OF EXECUTION OF SENTENCE AND RELEASE UPON BAIL HAS BEEN PREVIOUSLY GRANTED BY THE TRIAL COURT OR THIS COURT, it is temporarily continued for a period not to exceed sixty days upon the bail previously posted.  The purpose of a continued stay is to allow Appellant to file with the Supreme Court of Ohio an application for a stay during the pendency of proceedings in that court.  If a stay is continued by this entry, it will terminate at the earlier of the expiration of the sixty day period, or the failure of the Appellant to file a notice of appeal with the Supreme Court of Ohio in the forty-five day appeal period pursuant to Rule II, Sec. 2 of the Rules of Practice of the Supreme Court of Ohio.  Additionally, if the Supreme Court of Ohio dismisses the appeal prior to expiration of sixty days, the stay will terminate as of the date of such dismissal.

A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.

Abele, J. & McFarland, J.:  Concur in Judgment and Opinion.


For the Court,

BY:  _____

Jason P. Smith, Presiding Judge

### NOTICE TO COUNSEL

**Pursuant to Local Rule No. 14, this document constitutes a final judgment entry and the time period for further appeal commences from the date of filing with the clerk.**