[Cite as *State v. Adkins*, 2020-Ohio-6799.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## ALLEN COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                 CASE NO. 1-19-71

    v.

CLOIS-RAY H. ADKINS,                O P I N I O N

    DEFENDANT-APPELLANT.

Appeal from Allen County Common Pleas Court
Trial Court No. CR 2017 0290

Judgment Affirmed

Date of Decision: December 21, 2020

APPEARANCES:

    *William T. Cramer* **for Appellant**

    *Jana E. Emerick* **for Appellee**

**ZIMMERMAN, J.**

{¶1} Defendant-appellant, Clois-Ray H. Adkins ("Adkins"), appeals the June 13, 2019 judgment entry of conviction and sentence of the Allen County Common Pleas Court after Adkins was found guilty (by a jury) of murder in violation of R.C. 2903.02(A), an unclassified felony. For the reasons that follow, we affirm.

{¶2} This case stems from a September 3, 2017 altercation between Adkins and Robert L. Smith, II ("Smith") wherein Adkins hit Smith in the head with a tree branch and killed him. (June 12, 2019 Tr., Vol. II, at 337-340).

{¶3} On October 17, 2017, Adkins was indicted by the Allen County Grand Jury on four criminal counts: Count One, Murder in violation of R.C. 2903.02(A), (D) and R.C. 2929.02(B), an unclassified felony; Count Two, Murder in violation of R.C. 2903.02(B), (D) and R.C. 2929.02(B), an unclassified felony; Count Three, Felonious Assault in violation of R.C. 2903.11(A)(1), (D)(1)(a), a second-degree felony; and Count Four, Felonious Assault in violation of R.C. 2903.11(A)(2), (D)(1)(a), also a second-degree felony. (Doc. No. 3).

{¶4} On October 30, 2017, Adkins appeared for arraignment and entered pleas of not guilty. (Doc. No. 12). However, on January 5, 2018, Adkins trial counsel filed a written plea of not guilty by reason of insanity under Crim.R. 11(A) and a motion suggesting Adkins was not competent to stand trial. (Doc. Nos. 20,

21). Thereafter, the trial court ordered that Adkins undergo a competency-to-stand-trial examination under R.C. 2945.371(G)(3) and sanity-at-the-time-of-the-offense examination under R.C. 2945.371(G)(4).[1] (Doc. No. 22). A competency hearing was scheduled on March 13, 2018.[2] (Doc. Nos. 30, 31). However, Adkins's trial counsel requested a second-competency-to-stand-trial examination and sanity-at-the-time-of-the-offense examination, which the trial court ordered. (Doc. Nos. 33, 34).

{¶5} On August 13, 2018, the trial court scheduled the matter for a competency hearing to address the conflicting competency-evaluation reports. (Doc. No. 40). Because the trial court did not conduct the competency hearing ten days after the filing of the report of the competency evaluation under R.C. 2945.37(C), the State and defense requested additional evaluations for competency to stand trial, which the trial court granted. (Doc. Nos. 55, 56, 57, 58). Ultimately, the trial court held a competency hearing determining

> that [Adkins] has not proven by a preponderance of the evidence that [he] does not have sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding or that he is incapable of assisting counsel in his own defense.

---

[1] The trial court vacated the original trial date and authorized payment for mental-health records. (*See* Doc. Nos. 23, 24, 27). (Doc. Nos. 25, 26, 28).
[2] In our review of the record, it is unclear whether the parties appeared for the scheduled hearing and what (if anything) transpired.

(Doc. Nos. 65); (*See* Doc. No. 154).

{¶6} Thereafter, Adkins filed a motion with the trial court requesting the applicability of the amended version of R.C. 2901.05(B), Ohio's self-defense law, in this case. (Doc. No. 115). The State filed a memorandum in opposition. (Doc. No. 120). The trial court determined that the amended version of R.C. 2901.05(B) was *not* applicable to Adkins's case because the indicted offenses occurred *prior* to the effective date of the self-defense-law amendments.[3] (Doc. No. 123).

{¶7} After a jury trial on June 11 and 12, 2019, the jury found Adkins guilty of all four counts in the indictment. (Doc. Nos. 130, 131, 132, 133, 156); (*See* Doc. No. 134); (June 12, 2019 Tr., Vol. II, at 407-408). For sentencing, the trial court merged Counts One, Two, Three, and Four, and the State elected to proceed on the Murder charge under Count One. (Doc. Nos. 134, 156); (June 12, 2019 Tr., Vol. II, at 409-410). Pursuant to the State's election, the trial court sentenced Adkins to serve fifteen years to life in prison, a mandatory term.[4] (*Id.*); (June 12, 2019 Tr., Vol. II, at 412-413). The judgment entry was file-stamped on June 13, 2019. (*Id.*).

---

[3] Subsequent to the indictment in this case, R.C. 2901.05 was amended to require the "the prosecution [to] prove beyond a reasonable doubt that the accused person did not use the force in self-defense, defense of another, or defense of that person's residence, as the case may be." R.C. 2901.05(B)(1) (2019).

[4] The trial court also ordered that Adkins pay a $25.00 application fee to the Clerk of Court under R.C. 120.36 for the appointment of counsel; that he pay court costs; however, the trial court suspended payment of those costs with no future date specified; and that Adkins be transported to the Ohio Department of Rehabilitation and Correction ("ODRC") receiving jail-time credit for 648-days since September 3, 2017 together with future days while he awaited transport to ODRC. (Doc. Nos. 134, 156); (June 12, 2019 Tr., Vol. II, at 413).

Case No. 1-19-71

{¶8} Adkins filed his notice of appeal on November 25, 2019, and raises three assignments of error for our review.[5]  (Doc. No. 141).

### Assignment of Error I

**The trial court violated appellant's rights to the due process of law under both the state and federal constitution constitutional [sic] by requiring him stand trial while incompetent.**

{¶9} In his first assignment of error, Adkins argues that the trial court erred by determining that he was able to assist in his defense, and thus, he was incompetent to stand trial.[6]  Specifically, Adkins asserts that the trial court's determination is not supported by reliable, credible evidence, therefore, it constitutes an abuse of discretion.

*Standard of Review*

{¶10} "A trial court's decision on competency will not be disturbed absent an abuse of discretion."  *State v. Lechner*, 4th Dist. Highland No. 19CA3, 2019-Ohio-4071, ¶ 24, citing *State v. Clark*, 71 Ohio St.3d 466, 469 (1994), citing *State v. Frazier*, 61 Ohio St.3d 247, 251 (1991) and *State v. Boston*, 46 Ohio St.3d 108, 115 (1989), *overruled on other grounds*, *State v. Denver*, 64 Ohio St.3d 401 (1992), paragraph one of the syllabus; *see also State v. Green*, 5th Dist. Guernsey No. 07-

---

[5] Adkin's trial counsel sought leave to file a delayed appeal under App.R. 5 from us on the basis that he had become ill and had been hospitalized for 70 days following the sentencing hearing and after agreeing with Adkins to ensure that timely notice of appeal was filed, which we granted on December 4, 2019.  (Case No. 01-19-71); (Doc. Nos. 4, 5).

[6] Adkins does not challenge his competency as to his capability to understand the nature and objective of the proceedings against him.  (*See* Jan. 24, 2019 Tr. at 10-11, 24-25).

CA-000044, 2008-Ohio-6114, ¶ 14, citing *Clark* at 469. "An 'abuse of discretion' requires more than an error of law; implies the trial court's attitude is unreasonable, arbitrary or unconscionable." *Id.* citing *Clark* at 470, citing *State v. Moreland*, 50 Ohio St.3d 58, 61 (1990) and *State v. Adams*, 62 Ohio St.2d 151, 157 (1980); *see also Green* at ¶ 14. The trial court's competency determination will not be disturbed on appeal if the record contains "'some reliable, credible evidence supporting the trial court's conclusion that appellant understood the nature and objective of the proceedings against him.'" *State v. Neely*, 12th Dist. Madison No. CA-2002-02-002, 2002-Ohio-7146, ¶ 10, quoting *State v. Williams*, 23 Ohio St.3d 16, 19 (1986), (citation omitted); *see also Lechner* at ¶ 24; *Green* at ¶ 14, citing *Clark* at 470.

*Analysis*

{¶11} Due process requires a criminal defendant be competent to stand trial. *State v. Berry*, 72 Ohio St.3d 354, 359 (1995), citing *Pate v. Robinson*, 383 U.S. 375, 86 S.Ct. 836 (1966) and *Drope v. Missouri*, 420 U.S. 162, 95 S.Ct. 896 (1975). "It has long been accepted that a person who lacks the capacity to understand the nature and object of the proceedings against him, to consult with counsel, and to assist in preparing his defense may not be subjected to a trial." *Drope*, 420 U.S. at 171, 95 S.Ct. at 375. Thus, a "[c]onviction of an accused while he or she is legally incompetent is a violation of due process." *State v. Merryman*, 4th Dist. Athens No. 12CA28, 2013-Ohio-4810, ¶ 14, quoting *State v. Stewart*, 4th Dist. Galia No.

91CA24, 1992 WL 174699, *1 (July 22, 1992), quoting *Drope*, 420 U.S. at 171, 95 S.Ct. at 896; *see also Berry* at 439, citing *Pate* at 383 U.S. at 375, 86 S.Ct. at 903 and *Drope* 420 U.S. at 171, 95 S.Ct. at 896, and *State v. Brock*, 28 Ohio St.3d 108, 109 (1986).

{¶12} The United States Supreme Court established the test for competency and requires the trial court to determine if an accused "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding—and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 80 S.Ct. 788, 789 (1960). Ohio has codified this competency test in R.C. 2945.37:

> (G) A defendant is presumed to be competent to stand trial. If, after a hearing, the court finds by a preponderance of the evidence that, because of the defendant's present mental condition, the defendant is incapable of understanding the nature and objective of the proceedings against the defendant or of assisting in the defendant's defense, the court shall find the defendant incompetent to stand trial and shall enter an order authorized by section 2945.38 of the Revised Code.

R.C. 2945.37(G).

{¶13} If a criminal defendant is capable of understanding the nature and objective of the proceedings and assisting in his defense, then the criminal defendant is competent to stand trial under this subjective test. *Lechner*, 2019-Ohio-4071, ¶ 27. Further, "[a criminal] defendant with mental illness or intellectual deficiencies may still be competent to stand trial." *Id.*

> Incompetency must not be equated with mere mental or emotional instability or even with outright insanity. A defendant may be emotionally disturbed or even psychotic and still be capable of understanding the charges against him and of assisting his counsel.

*Bock*, 28 Ohio St.3d at 110. *See also Lechner* at ¶ 27, quoting *Bock* at 110.

{¶14} Here, our review of the record indicates that the issue of Adkins's competency was properly raised, and the trial court held a competency hearing. (Jan. 24, 2019 Tr. at 1). Prior to the commencement of that hearing, both the State and Adkins stipulated to the qualifications of Dr. Kara Marciani ("Dr. Marciani") and Dr. Bob Stinson ("Dr. Stinson") as psychologists and as competency experts. (*Id.*). Further, the State and Adkins jointly stipulated that both psychological reports of the doctors would be admitted into evidence.[7] (*Id.* at 2-3).

{¶15} After the competency hearing, the trial court determined that "[b]oth experts thought [Adkins] exhibited characteristics of an anti-social personality. [Dr.] Stinson equated that with a mental illness. [Dr.] Mariciani said that [Adkins's] anti-social personality did not rise to the level of serious[-]mental illness." (Doc. No. 65); (*See* Jan. 24, 2019 Tr. at 10-18, 24-35). Ultimately, the trial court determined that Adkins exhibited characteristics of anti-social personality and irritated and depressed mood due to his current legal predicament, but was competent to stand trial. (*Id.*); (*See id.*, at 16-17, 29-31). Hence, the crux of Adkins

---

[7] Adkins expert is Dr. Stinson and the State's expert is Dr. Marciani. (Jan. 24, 2019 Tr. at 5-6, 19).

argument is that the trial court erred in its determination, which amounted to an abuse of discretion.

{¶16} It is axiomatic, that the trial court is in the best position to determine the credibility of expert witnesses. *Lechner*, 2019-Ohio-4071, ¶ 32. The weight given to the evidence and the credibility of witnesses is determined by the trier of fact. *State v. DeHass*, 10 Ohio St.2d 230 (1967), paragraph one of the syllabus. The adequacy of the "data relied upon by the expert who examined [Adkins] is a question for the trier of fact." *See Lechner* at ¶ 32. "Deference on these issues should be given 'to those who see and hear what goes on in the courtroom.'" *State v. Were*, 118 Ohio St.3d 448, 2008-Ohio-2762, ¶ 46, quoting *State v. Cowans*, 87 Ohio St.3d 68, 84 (1999). Under the facts set forth in the record, it is evident that the trial court (who saw both expert-witnesses testify and heard the expert witnesses' respective testimonies) found Dr. Marciani's testimony to be of greater weight and to be more credible than Dr. Stinson's testimony. As such, we must yield to this determination by the trial court.

{¶17} Moreover, the trial court's findings and determinations are supported by reliable and credible evidence in the record, and thus, do not constitute an abuse of discretion. Accordingly, Adkins's first assignment of error is overruled.

**Assignment of Error II**

**Appellant was deprived of a fair trial when the trial court instructed the jury that appellant had the burden of proving self-defense.**

{¶18} In his second assignment of error, Adkins argues that the trial court deprived him of a fair trial by improperly instructing the jury as to the burden of proof on self-defense. Specifically, Adkins asserts that since he was charged with his offenses before the implementation of the amendments to Ohio's self-defense law under R.C. 2901.05 and because his offenses went to trial after the amendments became effective, he was entitled to the jury instruction requiring the *prosecution* to prove he did not act in self-defense.

*Standard of Review*

{¶19} Generally, we review alleged errors in jury instructions for an abuse of discretion. *State v. Blanton*, 3d Dist. Seneca No. 9-15-07, 2015-Ohio-4620, ¶ 55, citing *State v. Guster*, 66 Ohio St.2d 266, 271 (1981). An abuse of discretion suggests that a decision is unreasonable, arbitrary, or unconscionable. *State v. Adams*, 62 Ohio St.2d 151, 157-158 (1980). However, "[w]hether the jury instructions correctly state the law is a question of law, which we review de novo." *State v. Eaton*, 3d Dist. Auglaize Nos. 2-10-10 and 2-10-11, 2010-Ohio-6065, ¶ 34, citing *Murphy v. Carrolton Mfg. Co.*, 61 Ohio St.3d 585, 591 (1991).

{¶20} Notably, Adkins did not object to the trial court's self-defense instruction given to the jury before the jury retired to consider its verdict, and thus, it would be permissible for us to conclude he waived all but plain error on appeal. *Compare State v. Chavez*, 3d Dist. Seneca Nos. 3-19-05, 3-19-06, and 3-09-07, 2020-Ohio-426, ¶ 59, citing *State v. Harrison*, 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 69, *State v. Wright*, 6th Dist. Lucas No. L-16-1053, 2017-Ohio-1225, ¶ 26, and *State v. Robinson*, 8th Dist. Cuyahoga No. 102766, 2016-Ohio-808, ¶ 9. The plain-error doctrine should be applied only under exceptional circumstances and in order to prevent a manifest miscarriage of justice. *State v. Long*, 53 Ohio St.2d 91 (1978), paragraph three of the syllabus.

{¶21} Here, the record affirmatively demonstrates that Adkins sought to determine the applicability of Ohio's amended-self-defense law under R.C. 2901.05 prior to trial by motion. (Doc. Nos. 115, 120). However, the trial court denied Adkin's motion and determined that the amended self-defense law under R.C. 2901.05 was inapplicable based on the date of the commission of the offenses. (Doc. No. 123). Nevertheless,

> [a] party does not waive his objections to the [trial] court's charge by failing to formally object thereto (1) where the record affirmatively shows that a trial court has been fully apprised of the correct law governing a material issue in dispute, and (2) the requesting party has been unsuccessful in obtaining the inclusion of that law in the trial court's charge to the jury.

*State v. Wolons*, 44 Ohio St.3d 64 (1989), paragraph one of the syllabus. *See also State v. Mincey*, 1st Dist. Hamilton No. C-160565, 2018-Ohio-662, ¶ 50, quoting *Wolons* at paragraph one of the syllabus and citing *Prelsey v. Norwood*, 36 Ohio St.2d 29, 33 (1973); *State v. Nye*, 3d Dist. Seneca No. 13-13-05, 2013-Ohio-3783, ¶ 25, citing *Wolons* at paragraph one of the syllabus and *State v. Fine*, 2d Dist. Miami No. 09CA00032, 2010-Ohio-2637, ¶ 21. Thus, notwithstanding Adkins's failure to formally object to this jury instruction under Crim.R. 30 at trial and because Adkins's trial counsel previously apprised the trial court of *what he believed to be* the governing law of self-defense, which was not included in the trial court's charge to the jury, we conclude that the self-defense issue has been preserved for our review. (*See* Doc. Nos. 115, 120, 123).

*Analysis*

**{¶22}** At trial, the trial court instructed the jury on self-defense as follows:

> The defendant is asserting an affirmative defense known as self-defense. The burden of going forward the evidence of self-defense and the burden of proving an affirmative defense are upon the defendant. He must establish such a defense by a preponderance of the evidence.

(June 12, 2019 Tr., Vol. II, at 396). The verdict forms provided to the jury reflect a blank line for the insertion of "Guilty" or "Not Guilty" for the offense charged.

-12-

(Doc. Nos. 130, 131, 132, 133). The verdict forms also reflect a separate finding for self-defense as stated "[w]e further find that the defendant (*)_____prove by a preponderance of the evidence that he acted in self-defense[]" with the blank lines for the insertion of "Did" or "Did Not." (*Id.*).

{¶23} Ohio's self-defense law (as it existed in at the time of Adkin's offenses) under R.C. 2901.05 placed the burden of going forward with evidence of self-defense (an affirmative defense) and the burden of proof on Adkins with a standard of proof of preponderance of the evidence consistent with the jury instruction given by the trial court. Specifically, (former) R.C. 2901.05 states in its pertinent part:

> (A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. *The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense, is upon the accused.*

(Emphasis added.) R.C. 2901.05 (2008) (current version at R.C. 2901.05 (2019)).

{¶24} Hence, to establish self-defense through the use of deadly force, Adkins was required to prove that:

> '(1) [he] was not at fault in creating the situation giving rise to the affray; (2) [he] had a bona fide belief that he [] was in imminent danger of death or great bodily harm and that the only means of escape from such danger was in the use of force; and (3) [he] must not have violated any duty to retreat or to avoid the danger.'

*State v. Bagley*, 3d Dist. Allen No. 1-13-31, 2014-Ohio-1787, ¶ 16, quoting *State v. Thacker*, 3d Dist. Marion No. 9-03-37, 2004-Ohio-1047, ¶ 14, citing *State v. Williford*, 49 Ohio St.3d 247, 249 (1990) and *State v. Robbins*, 58 Ohio St.2d 74 (1979), paragraph two of the syllabus.

**{¶25}** After R.C. 2901.05 was amended by Am.Sub.H.B. 228, Section 1, on December 27, 2018 ("H.B. 228") and became effective on March 28, 2019, it now provides in its pertinent parts:

> (A) Every person accused of an offense is presumed innocent until proven guilty beyond a reasonable doubt, and the burden of proof for all elements of the offense is upon the prosecution. *The burden of going forward with the evidence of an affirmative defense, and the burden of proof, by a preponderance of the evidence, for an affirmative defense other than self-defense, defense of another, or defense of the accused's residence as described in division (B)(1) of this section, is upon the accused.*
>
> (B)(1) *A person is allowed to act in self-defense, * * *. If, at the trial of a person who is accused of an offense that involved the person's use of force against another, there is evidence presented that tends to support that the accused person used the force in self-defense, * * *, the prosecution must prove beyond a reasonable doubt that the accused person did not use the force in self-defense, * * *, as the case may be*.
>
> * * *
>
> (C)   As part of its charge to the jury in a criminal case, the court shall read the definitions of "reasonable doubt" and "proof beyond a reasonable doubt," contained in division (D) of this section.
>
> * * *

(E) "Reasonable doubt" is present when the jurors, after they have carefully considered and compared all the evidence, cannot say they are firmly convinced of the truth of the charge. It is a doubt based on reason and common sense. Reasonable doubt is not mere possible doubt, because everything relating to human affairs or depending on moral evidence is open to some possible or imaginary doubt. "Proof beyond a reasonable doubt" is proof of such character that an ordinary person would be willing to rely and act upon it in the most important of the person's own affairs.

R.C. 2901.05 (2019). While self-defense remains an affirmative defense, the 2019 amendments shifted the burden of proof to the State and the standard of proof (to the State) to proof beyond a reasonable doubt. *See id.*

{¶26} Before we address Adkins assertion that R.C. 2901.05 (as amended) is remedial and procedural under his constitutional argument, we must first reference appropriate legal maxims as they pertain to the retroactivity of laws and fairness.

{¶27} To properly frame this discussion, we note that "the presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic." *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265, 114 S.Ct. 1483, 1497 (1994), citing *Kaiser Aluminum & Chemical Corp. v. Bonjorno*, 494 U.S. 827, 842-844, 855-856, 110 S.Ct. 1570, 1579-1581, 1586-1587 (1990) (Scalia, J., concurring); *Dash v. Van Kleeck*, 7 Johns. *477, *503 (N.Y.1811) ("It is a principle of the English common law, as ancient as the law itself, that a statute, even of its omnipotent parliament, is not to have a retrospective

effect") (Kent, C.J.). This legal maxim as to retroactivity is premised on the notion "that notice or warning of a rule should be given in advance of the action whose effects will be judged." *See* Norman J. Singer, *Sutherland Statutory Construction*, § 41:2 at 376 (2001). Retroactivity is disfavored not because it is retroactive (alone), but rather because "elementary consideration of fairness dictate that an individual should have the opportunity to know what the law is and to conform their conduct; settled expectations should not be lightly disrupted." *Landgraf*, 511 U.S. at 265, 114 S.Ct. at 1497, citing *General Motors Corp. v. Romein*, 503 U.S. 181, 191, 112 S.Ct. 1105, 1112 (1992) and Munzer, *A Theory of Retroactive Legislation*, 61 Texas L.Rev. 425, 471 (1982). Put more plainly, it is one of the essential components of due process. *See State v. Elmore*, 122 Ohio St.3d 472, 2009-Ohio-3478, ¶ 23, (stating that due process requires law to be written so that the "public" can "adequately inform itself * * * before acting"); *State v. Tanner*, 15 Ohio St.3d 1, 3 (1984), quoting *Columbus v. Thompson*, 25 Ohio St.2d 26, 30 (1971), quoting *United States v. Capital Traction Co.*, 34 App.D.C. 592 (1910) and citing *Connally v. General Construction Co.*, 269 U.S. 385, 46 S.Ct. 126 (1926) (""'[t]he crime, and the elements constituting it, must be so clearly expressed that the ordinary person can intelligently choose, in advance, what course it is lawful for him to pursue."''").

{¶28} In the case *sub judice*, Adkins had fair notice of the prohibited conduct of the charges filed against him. Importantly, "'a statute's presence on the books

constitutes fair warning of the prohibited conduct.'" *See State v. Philpotts*, 8th Dist. Cuyahoga No. 107374, 2019-Ohio-2911, ¶ 45, quoting *State v. Wheatley*, 4th Dist. Hocking No. 17CA3, 2018-Ohio-464, ¶ 35, citing *Dobbert v. Florida*, 432 U.S. 282, 297, 97 S.Ct. 2290, 2300 (1977) and *Bryan v. United States*, 524 U.S. 184, 193, 118 S.Ct. 1939, 1946 (1998) (stating that every citizen is presumed to know the law). Thus, Adkins, under his indictment had "fair warning" that murder constituted a crime and that self-defense through the use of deadly force cannot be established if he was at fault for creating the situation giving rise to the affray.[8]

{¶29} With this background in mind, we now address Adkins's assertion that since he was indicted for offenses arising in 2017, but went to trial *after* the effective date of the amendments to Ohio's self-defense law, the new self-defense law should be applied in his case. Specifically, Adkins avers that the State in his case has the burden of proof to prove beyond a reasonable double that he did not act in self-defense.

{¶30} Article II, Section 28 of the Ohio Constitution provides that "[t]he general assembly shall have no power to pass retroactive laws * * *." Determining whether a criminal statute violates the Retroactivity Clause involves a two-step analysis. *See State v. White*, 132 Ohio St.3d 344, 2012-Ohio-2583, ¶ 27. First, we

---

[8] Significantly, Adkins does not raise a procedural- or substantive-due-process argument nor does he argue that the statute is so vague that it fails to provide adequate notice, so accordingly, we will not address those issues.

must determine if the statute was expressly made retrospective. *See* R.C. 1.48; *State v. Cook*, 83 Ohio St.3d 404, 409 (1998), *superseded by statute on other grounds*, *State v. White* 132 Ohio St.3d 344, 2012-Ohio-2583. If we determine R.C. 2901.05 is not expressly retroactive, our analysis ends there. *See Van Fossen v. Babcock Wilcox Co.*, 36 Ohio St.3d 100, 105, 106 (1988), *superseded by statute on other grounds*, *Hannah v. Dayton Power & Light Co.*, 82 Ohio St.3d 482 (1998). However, if the statute is expressly retroactive, we move on to address constitutionality. *See Cook* at 409.

{¶31} Under R.C. 1.48 "[a] statute is presumed to be prospective in its operation unless expressly made retrospective." R.C. 1.48; *see Van Fossen* at 105; *see also State v. Koch*, 2d Dist. Montgomery No. 28000, 2019-Ohio-4099, ¶ 103, quoting R.C. 1.48 and *Van Fossen* at 105.

> A regularly enacted statute of Ohio is presumed to be constitutional and is therefore entitled to the benefit of every presumption in favor of its constitutionality. That presumption of validity of such legislative enactment cannot be overcome unless it appear[s] that there is a clear conflict between the legislation in question and some particular provision or provisions of the Constitution.

(Internal citations and quotations omitted.) *Cook* at 409.

{¶32} Here, the General Assembly never expressly determined that H.B. 228 is to be retroactively applied. *See Koch* at ¶ 103. Moreover, R.C. 2901.05, on its face, does not explicitly indicate a legislative intent that it applies retroactively to offenses that occurred *before* the effective date of the statute. *See* R.C. 2901.05

(2019). Thus, we are constrained to follow the Supreme Court of Ohio's decision in *Kiser v. Coleman*, 28 Ohio St.3d 259, 262 (1986), which we find instructive here. In *Kiser*, the Ohio Supreme Court stated where "'there is no clear indication of retroactive application, then the statute may *only* apply to cases which arise *subsequent* to its enactment.'" (Emphasis added.) *Kiser* at 262. *See also Van Fossen* at 106, quoting *Kiser* at 262.

> Furthermore, '[t]he reenactment, amendment, or repeal of a statute does not * * *: 1) [a]ffect the prior operation of the statute or any prior action taken thereunder; 2) [a]ffect any validation, cure, right, privilege, obligation, or liability previously acquired, accrued, accorded, or incurred thereunder; 3) [a]ffect any violation thereof or penalty, forfeiture, or punishment incurred in respect thereto, prior to the amendment or repeal; [and] 4) [a]ffect any investigation, proceeding, or remedy in respect of any such privilege, obligation, liability, penalty, forfeiture, or punishment [imposed, as if the statute had not been repealed or amended].'

*Koch* at ¶ 103, quoting R.C. 1.58(A)(1)-(4). "This rationale appropriately represents the law of this [S]tate that an accused shall be prosecuted under the law as existed when the offense was committed", thus, harmonizing the legal maxims involving retroactivity and Adkins fundamental right to due process with R.C. 1.48 and a prospective application of R.C. 2901.05. *State v. Gall*, 65 Ohio App.2d 57, 61 (2d Dist.1980), (analyzing the applicability of R.C. 1.48 to R.C. 2901.05(A), effective November 1, 1978 (Am.Sub.H.B. 1168) to Gall's offenses which were committed on April 3, 1978, while *Robinson* law was supreme, and prior to the amendment to

R.C. 2901.05(A) when the case was tried in 1979 after the effective date of the amendment); *see* R.C. 1.47(B) and (C).

{¶33} Accordingly, we conclude that Adkins (at the time of his trial) was not entitled to retroactive application of the burden-shifting changes made by the General Assembly to Ohio's self-defense statute, R.C. 2901.05, set forth in H.B. 228. *See State v. Wallace-Lee*, 2d Dist. Green No. 2019-CA-19, 2020-Ohio-3681, ¶ 21, fn. 5, citing *Koch* at ¶ 103; *State v. Zafar*, 10th Dist. Franklin No. 19AP-255, 2020-Ohio-3341, ¶ 31-32, quoting *Koch* at ¶ 103; *State v. Fisher*, 8th Dist. Cuyahoga No. 108494, 2020-Ohio-670, ¶ 24, fn. 2, quoting *Koch* at ¶ 103; *State v. Ward*, 10th Dist. Franklin No. 19AP-266, 2020-Ohio-465, ¶ 15, quoting *Koch* at ¶ 103; *State v. Moore*, 5th Dist. Muskingum No. CT2019-0030, 2020-Ohio-342, ¶ 11; *State v. Shakhmanov*, 2d Dist. Montgomery No. 28066, 2019-Ohio-4705, ¶ 39; *State v. Thomas*, 11th Dist. Portage No. 2017-P-0094, 2019-Ohio-2795, ¶ 36, fn. 1; *State v. McEndree*, 1st Dist. Hamilton No. C-190418, 2020-Ohio-4526, ¶ 46, citing Koch and *State v. Whitman*, 5th Dist. Stark No. 2019CA00094, 2019-Ohio-4140. *See also State v. Chavez*, 3d Dist. Seneca Nos. 13-19-05, 13-19-06, and 13-19-07, 2020-Ohio-426, ¶ 36, fn. 4, quoting *Koch* at ¶ 103 and *State v. Crowe*, 3d Dist. Allen No. 1-19-12, 2019-Ohio-3986, ¶ 15, fn. 1, citing R.C. 2901.05(B)(1) (2019); *State v. Williams*, 3d Dist. Allen No. 1-19-39, 2019-Ohio-5381, ¶ 12, fn. 1, quoting *Koch* at ¶ 103; *State v. Redding*, 3d Dist. Union No. 14-19-01, 2019-Ohio-5302, ¶ 13, fn. 1,

quoting *Koch* at ¶ 103. *Contra State v. Gloff*, 12th Dist. Clermont No. CA2019-06-047, 2020-Ohio-3143, ¶ 28, citing *State v. Humphries*, 51 Ohio St.2d 95 (1977), paragraph four of the syllabus; *State v. Lewis*, 12th Dist. Butler No. CA2019-07-128, 2020-Ohio-3762, ¶ 26, citing *Gloff* at ¶ 28; *State v. Smith*, 6th Dist. Wood No. WD-19-070, 2020-Ohio-5119, ¶ 32, citing *Lewis* at ¶ 26. To find the General Assembly intended this outcome contradicts the fundamental instruction that, "[i]n enacting a statute, it is presumed that ... [a] just and reasonable result is intended" in the execution of R.C. 2901.05. *See* R.C. 1.47(C). To construe R.C. 2901.05 otherwise would lead to inconsistent and absurd results. *See* R.C. 1.47(D).

{¶34} Accordingly, Adkins's second assignment of error is overruled.

### Assignment of Error III

**Appellant's convictions were not supported by the weight of the evidence on the issue of self-defense.**

{¶35} In his first assignment of error, Adkins argues that his murder and felonious-assault convictions are against the manifest weight of the evidence. Specifically, Adkins argues that the trial court lost its way in evaluating the evidence by failing to conclude that he acted in self-defense.

*Standard of Review*

{¶36} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389

(1997), *superseded by statue on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997).  Thus, we address each legal concept individually.

**{¶37}** "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt."  *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by statute on other grounds*, *Smith*, 80 Ohio St.3d at 89.  Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt."  *Id.*  "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact."  *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 197 Ohio App.3d 505, 2011-Ohio-6267, ¶ 25 (1st Dist.).  *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

**{¶38}** On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record,

"'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *DeHass*, 10 Ohio St.2d at 231. When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Allied Offenses*

{¶39} As an initial matter, we need not address Adkins weight-of-the-evidence arguments as to his murder and felonious-assault convictions under Counts Two, Three, and Four of the indictment. Specifically, "[w]hen counts in an indictment are allied offenses, and there is sufficient evidence to support the offense on which the state elects to have the defendant sentenced, the appellate court need not consider the sufficiency [or weight] of the evidence on the count that is subject

to merger because any error would be harmless" beyond a reasonable doubt.[9] *State v. Ramos*, 8th Dist. Cuyahoga No. 103596, 2016-Ohio-7685, ¶ 14, citing *State v. Powell*, 49 Ohio St.3d 255, 263 (1990), *superseded by state constitutional amendment on other grounds*, *Smith*, 80 Ohio St.3d at 102, fn. 4.

**{¶40}** Here, the trial court merged Counts Two, Three, and Four with Count One without objection. (June 12, 2019 Tr., Vol. II, at 409-410). Thus error, if any, with respect to the sufficiency or weight of the evidence as to Adkins's murder and felonious-assault convictions under Counts Two, Three, and Four is harmless beyond a reasonable doubt because the trial court merged Counts Two, Three, and Four with Count One. *See Ramos* at ¶ 13. In other words, Adkins was not convicted of those offenses because the trial court merged those offenses for purposes of sentencing. *See State v. Turner*, 2d Dist. Clark No. 2017-CA-78, 2019-Ohio-144, ¶ 22, quoting *State v. Croom*, 7th Dist. Mahoning No. 12 MA 54, 2013-Ohio-5682, ¶ 59, citing *State v. Whitfield*, 124 Ohio St.3d 319, 2010-Ohio-2, ¶ 12, *superseded by statute on other grounds*, *United States v. Mackey*, S.D. No. 3:04cr00096, 2014 WL 6606434, *2 (Nov. 12, 2014), fn. 4. *See also Ramos* at ¶ 16, citing *State v. Obsaint*, 1st Dist. Hamilton No. C-060629, 2007-Ohio-2661, ¶ 24. Indeed, the Supreme

---

[9] The Eighth District Court of Appeals expressed concern with the blind application of this principle and hypothesized that there could be a circumstance under which a challenge to an offense that is merged for purposes of sentencing would not be harmless beyond a reasonable doubt. *See Ramos* ¶ 17. However, the Eighth District ultimately determined that it need not reach that issue in *Ramos* after reasoning that, "[f]or purposes of this appeal, our conclusion that the state offered legally sufficient evidence to prove the aggravated murder conviction renders our hypothetical moot." *Id.* at ¶ 18.

Court of Ohio has explicitly stated that a "conviction" requires both a finding of guilt and a sentence. *Ramos* at ¶ 16, citing *State v. Henderson*, 58 Ohio St.2d 171, 178 (1979). For these reasons, we need not address any arguments challenging the weight of the evidence regarding Adkins's murder and felonious-assault convictions under Counts Two, Three, and Four. *See Ramos* at ¶ 13, 18.

*Manifest Weight of the Evidence Analysis*

{¶41} We now turn to address Adkins's conviction of murder in violation of R.C. 2903.02(A), (D) and R.C. 2929.02(B) under Count One. Importantly, Adkins does not dispute that the State proved all of the elements of that offense. Rather, Adkins argues that the jury "lost its way" in concluding that he did not act in self-defense. Specifically, Adkins argues that the evidence adduced at trial demonstrated that he killed Smith in self-defense.

{¶42} Because we have determined that Adkins is not entitled to the retroactive application of Ohio's new self-defense law, we will apply the version of self-defense under R.C. 2901.05 in effect at the time Adkins committed his offenses. *See Koch*, 2019-Ohio-4099, at ¶ 103 (concluding that the defendant was "not entitled to retroactive application of the burden shifting changes by the legislature to Ohio's self-defense statute, R.C. 2901.05, as a result of H.B. 228"). Thus, "'[s]elf-defense is an affirmative defense, which means that the burden of going forward is on the defendant who must prove each element by a preponderance of

the evidence.'" *State v. Oates*, 3d Dist. Hardin No. 6-12-19, 2013-Ohio-2609, ¶ 10, quoting *State v. Kimmell*, 3d Dist. Wyandot No. 16-10-06, 2011-Ohio-660, ¶ 19, citing *State v. Densmore*, 3d Dist. Henry No. 7-08-04, 2009-Ohio-6870, ¶ 24 and R.C. 2901.05 (2008) (current version at R.C. 2901.05 (2019)). "Affirmative defenses such as self-defense '"do not seek to negate any elements of the offense which the State is required to prove" but rather they "admit[] the facts claimed by the prosecution and then rel[y] on independent facts or circumstances which the defendant claims exempt him from liability."'" *Id.* at ¶ 10, quoting *State v. Smith*, 3d Dist. Logan No. 8-12-05, 2013-Ohio-746, ¶ 32, quoting *State v. Martin*, 21 Ohio St.3d 91, 94 (1986).

{¶43} "The elements of self-defense differ depending on whether the defendant used deadly or non-deadly force to defend himself." *Bagley*, 2014-Ohio-1787, at ¶ 15, citing *Densmore*, 2009-Ohio-6870, at ¶ 25. To establish self-defense through the use of non-deadly force, an accused must prove: (1) the accused was not at fault in creating the situation giving rise to the affray, (2) the accused (even if mistaken) had a bona fide belief that he was in imminent danger of any bodily harm; and (3) the only means to protect himself from such danger was the use of force not likely to cause death or great bodily harm. "In instances where less than deadly force is used, the defendant need only show a fear of bodily harm, not of death or great bodily harm." *State v. Brown*, 2d Dist. Montgomery No. 27312, 2017-Ohio-

-26-

7424, ¶ 24, citing *State v. Gee*, 2d Dist. Miami No. 87-CA-22, 1987 WL 20260, *2

(Nov. 17, 1987) and *State v. Perez*, 72 Ohio App.3d 468, 472 (10th Dist.1991).

**{¶44}** By contrast,

> To establish self-defense through the use of deadly force, an accused must prove: "(1) the accused was not at fault in creating the situation giving rise to the affray; (2) the accused had a bona fide belief that he or she was in imminent danger of death or great bodily harm and that the only means of escape from such danger was in the use of force; and (3) the accused must not have violated any duty to retreat or to avoid the danger."

*Bagley*, 2014-Ohio-1787at ¶ 16, quoting *Thacker*, 2004-Ohio-1047, at ¶ 14, citing

*Williford*, 49 Ohio St.3d at 249 and *Robbins*, 58 Ohio St.2d 74, at paragraph two of

the syllabus.

> Both versions of self-defense, however, use the term "great bodily harm": self-defense involving deadly force uses the term to describe the level of harm the defendant must perceive before he or she is justified in using deadly force, while self-defense with non-deadly force uses the term to describe the level of force a defendant may not apply.

*State v. Juntunen*, 10th Dist. Franklin No. 09AP-1108, 2010-Ohio-5625, ¶ 23. *See*

*State v. Jeffers*, 11th Dist. Lake No. 2007-L-011, 2008-Ohio-1894, ¶ 68. Likewise,

there is *no* duty to retreat in cases involving non-deadly force. *Brown* at ¶ 25, citing

*State v. Kucharski*, 2d Dist. Montgomery No. 20815, 2005-Ohio-6541, ¶ 21, citing

*Perez* at 472. "'[I]f there is sufficient evidence on the issue of self-defense

involving non-deadly force * * * the trial court must instruct the jury on that

defense.'" *Jeffers* at ¶ 76, quoting *State v. Griffin*, 2d Dist. Montgomery No. 20681,

2005-Ohio-3698, ¶ 16, citing *State v. Ervin*, 75 Ohio App.3d 275, 279 (8th Dist.1991). "If a defendant fails to prove *any* one of the elements of self-defense by a preponderance of the evidence, he has failed to demonstrate that he acted in self-defense." (Emphasis added.) *Kimmel*, 2011-Ohio-660, at ¶ 21, citing *State v. Jackson*, 22 Ohio St.3d 281, 284 (1986).

{¶45} On appeal, Adkins contends that the evidence at trial supports that he acted in self-defense and is weightier than the evidence presented by the State that he did not. In support of his argument Adkins asserts that he was pursued through the neighborhood by a group of people which required him to act in self-defense. Hence, a review of the testimony is required.

{¶46} At trial, four witnesses for the State testified as to Adkins's interactions with Smith on September 3, 2017. (June 11, 2019 Tr., Vol. I, at 228, 248); (June 12, 2019 Tr., Vol. II, at 272-273, 292, 304, 318, 325-326). Further, the State introduced exhibit "33", a cell-phone video depicting the altercation. (June 11, 2019 Tr., Vol. II, at 261-262); (June 12, 2019 Tr., Vol. II, at 323-324, 342-343).

{¶47} The State called James Vice ("Vice"), as its first witness. (*Id.* at 228). Vice testified that on September 3, 2017, he was looking for a neighbor's 12 or 13-year-old daughter in his neighborhood. (*Id.* at 230, 234, 240). According to Vice, the child was spotted with Adkins whom Vice believed was 21 or 23 years old. (*Id.* at 230-231, 234, 240). Vice testified that the child was supposed to be at home

being babysat by her sisters, but she was with Adkins. (*Id.* at 231). Vice located Adkins with the child at Unity Elementary School on Catalpa Avenue and Sugar Street and confronted Adkins telling him "that he wasn't supposed to be in area and that he was supposed to be leaving kids alone." (*Id.* at 232, 234). Vice testified that they had a "heated discussion", and that Adkins threatened "to beat him up and do what he wants to do." (*Id.* at 235). Vice testified that he instructed the child (whom he described as intellectually disabled) to go home. (*Id.* at 236). However, Vice further testified that he later learned that the child did not go home, so he returned to the area of the school, and witnessed Smith hit the ground after he was hit with a tree branch by Adkins. (*Id.* at 238).

{¶48} Next, the State called Linda Roby ("Roby") as a witness. (*Id.* at 248). Roby testified that in the early evening hours on September 3, 2017, she was sitting on her front porch with her two grandchildren and her son-in-law, George Sherin ("Sherin"). (*Id.* at 250). According to Roby, she observed Adkins talking on his cell-phone at the northwest corner of the intersection of Holmes and Milburn Avenues (in Lima). (*Id.* at 251-252). Roby testified that there was a group of young children calling Adkins a "chomo" which she described as being street slang for a child molester. (*Id.* at 252-253). Roby testified that she saw Adkins walk north on Milburn Avenue and stop to break a tree branch from a tree. (*Id.* at 253). Roby testified that Adkins brought the tree branch back to where she first observed him

(Homes and Milburn Avenues) where he propped the branch up against a telephone pole. (*Id.* at 254). She stated that Adkins continued to pace and talk on his phone after that. (*Id.* at 255).

{¶49} Roby testified that Smith and his uncle arrived at her home about 20 minutes later. (*Id.* at 256). Roby testified that Smith asked her what's going on (with Adkins). (*Id.*). Roby told Smith that the young children were calling Adkins a "chomo". (*Id.* at 257). Roby testified that Smith told her that Adkins "was messing with a fourteen year old girl down at the school." (*Id.* at 257). Ultimately, Roby testified that she saw Smith walk toward Adkins. (*Id.* at 259). Roby stated that Smith and Adkins were on the opposite sides of the street at this point. (*Id.*). Then, according to Roby, Smith and Adkins meet. (*Id.*). Roby testified that Smith had nothing in his hands when Adkins picked up the tree branch and hit him like he was "hitting a baseball". (*Id.* at 259-260). Roby stated that after Adkins hit Smith everyone was running and screaming. (*Id.* at 260).

{¶50} Next, Roby narrated the events depicted in the cell-phone video, and testified that after Smith was hit, by Adkins, she called 911. (*Id.* at 261-262); (*See* State's Ex. 33). Roby testified that she and Sherin attempted to perform CPR, but their attempts were unsuccessful. (*Id.*). Roby also testified that (up and until Smith went down the street) there was nothing keeping Adkins from leaving the scene. (*Id.* at 270).

{¶51} Next, the State called George Sherin ("Sherin"). (*Id.* at 272-273). Sherin testified that on September 3, 2017, he observed Adkins walking up and down the street pacing back and forth on Milburn Avenue just north of Holmes Avenue. (*Id.* at 274). He identified Adkins as a white male that he did not know. (*Id.* at 2274-275). According to Sherin, he saw Adkins walk in between two trees, pick up a tree branch, and then break a couple of smaller branches from it. (*Id.* at 275). Sherin also testified that Adkins leaned the tree branch against a telephone pole at the intersection of Milburn and Holmes Avenues. (*Id.* at 276).

{¶52} Sherin testified that when Smith arrived at Roby's home he (Smith) spoke with Roby (his mother-in-law). (*Id.* at 278). Sherin also testified that his six-year-old son and four-year-old niece were on the porch. (*Id.*). Sherin stated that he did not recall the conversation between Roby and Smith because he was paying attention to the children. (*Id.*). Next, Sherin stated that Smith stepped off the porch, spoke with someone, tossed something out of his pocket, and then walked towards Adkins. (*Id.* at 279). Sherin testified that there were young children on bicycles riding in circles as Smith approached Adkins. (*Id.* at 280). According to Sherin, Smith had nothing in his hands as he approached Adkins when Smith was hit (by Adkins) with the tree branch. (*Id.* at 280-281). Sherin testified that he checked Smith to see if he was breathing. (*Id.*). Thereafter, Sherin jumped up and took off

running after Adkins following him to Fairview Avenue where he watched him enter a house. (*Id.* at 282).

{¶53} On cross-examination, Sherin testified that he saw Smith put his arms up and seconds later he was struck by Adkins with the tree branch. (*Id.* at 290). Importantly, Sherin stated that he heard no words exchanged between Adkins and Smith. (*Id.*).

{¶54} The State called its fourth witness, Larry Johnson, Jr. ("Johnson"). (*Id.* at 292). Johnson testified that on September 3, 2017, he lived on Catalpa Avenue across the street from Vice. (*Id.* at 293-294). Johnson testified that he walked from Catalpa to Holmes and Milburn Avenues where he observed Smith in the street. (*Id.* at 295). He testified that Smith wanted to fight Adkins because he (Adkins) is a pedophile and was with a young girl. (*Id.*). According to Johnson, Smith handed him the contents of his pockets, and he started walking towards Adkins.[10] (*Id.* at 295-296). Johnson testified that he then saw Adkins walking toward Smith in a "violent manner", then pick up the tree branch and hit Smith. (*Id.* at 296). On cross-examination, Johnson testified that Smith told him he was going to fight Adkins and that is why he handed him the contents of his pockets and "rabbit-eared his pockets". (*Id.* at 302).

{¶55} Adkins presented no witnesses or evidence.

---

[10] Smith gave him a cell-phone, some rolled cigarettes, and his headphones. (*Id.* at 296). Johnson testified that Smith flipped his pockets indicating they were empty. (*Id.*).

{¶56} Upon our review, we conclude that the weight of the evidence supports that Adkins was at fault for creating the situation. Specifically, Adkins did not live in the neighborhood, was causing alarm to the neighborhood residents by his conduct with children, and by arming himself with a tree branch for no apparent reason. Since the elements of self-defense are cumulative and because Adkins did not establish he was not at fault for creating the situation, Adkins defense of self-defense fails. *Kimmel*, 2011-Ohio-660, at ¶ 21, citing *Jackson*, 22 Ohio St.3d at 284.

{¶57} For these reasons, we cannot conclude that that the jury lost its way by concluding that Adkins did not act in self-defense and created such a manifest miscarriage of justice that Adkins's murder conviction must be reversed and a new trial ordered.

{¶58} Accordingly, Adkins's third assignment of error is overruled.

{¶59} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**SHAW, P.J. and PRESTON, J., concur.**

**/jlr**