[Cite as *State v. Greene*, 2022-Ohio-1357.]

# IN THE COURT OF APPEALS OF OHIO
## THIRD APPELLATE DISTRICT
## AUGLAIZE COUNTY

STATE OF OHIO,

    PLAINTIFF-APPELLEE,                  CASE NO.  2-21-07

    v.

SEAN L. GREENE,                          O P I N I O N

    DEFENDANT-APPELLANT.

---

Appeal from Auglaize County Common Pleas Court
Trial Court No. 2019-CR-0247

Judgment Affirmed

Date of Decision:  April 25, 2022

---

APPEARANCES:

    *Michael Mills* for Appellant

    *Benjamin R. Elder* for Appellee

**ZIMMERMAN, P.J.**

{¶1} Defendant-appellant, Sean L. Greene ("Greene"), appeals the judgments of the Auglaize County Court of Common Pleas, Criminal Division, challenging the trial court's decision to admit evidence of Greene's refusal to submit to a breath test; the trial court's admission of testimony asserted to be privileged and unfairly prejudicial; and the sufficiency and manifest weight of the evidence involving the jury's verdicts. For the reasons that follow, we affirm.

{¶2} On July 6, 2019, in Auglaize County, Ohio, Greene was operating a vehicle at a high rate of speed southbound on Interstate 75 when he struck a vehicle driven by Barbara Winters ("Winters") causing a two-vehicle roll-over crash.

{¶3} At the scene, Greene was observed by witnesses and law-enforcement officers to have an odor of alcohol about his person. Greene refused the standardized field sobriety tests ("SFST") and a breath test offered by law enforcement at the scene. He also refused a law-enforcement request for a blood test at the hospital. Greene was on postrelease control at the time of the crash.

{¶4} On September 3, 2019, the Auglaize County Grand Jury indicted Greene on five criminal counts including: Counts One and Two, aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), both third-degree felonies; Count Three, OVI in violation of R.C. 4511.19(A)(1)(a), a first-degree misdemeanor; Count Four, OVI in violation of R.C. 4511.19(A)(1)(b), a first-degree

misdemeanor; and Count Five, vehicular assault in violation of R.C. 2903.08(A)(2)(b), a fourth-degree felony. On November 12, 2019, Greene appeared for arraignment and entered not-guilty pleas.

{¶5} On November 22, 2019, Greene filed a motion to suppress in the trial court. On May 4, 2020, the trial court scheduled the matter for a suppression hearing. On May 6, 2020, the State, in open court, dismissed Counts Two and Four, without prejudice.

{¶6} On May 28, 2020, the trial court held the scheduled suppression hearing. At the conclusion of the suppression hearing, the trial court ordered the defense to submit proposed findings of facts and conclusions of law, and the State to file its reply. On June 5, 2020, Greene filed his proposed findings of facts and conclusions of law. The State filed its reply in the trial court on June 11, 2020. On June 17, 2020, the trial court granted Greene's motion (as to his refusal to submit to a blood test at the hospital) and denied (his refusal to consent to the SFST and breath test at the crash scene).

{¶7} Greene's case proceeded to a jury trial on May 10, 2021, and he was found guilty by the jury of Counts One, Three, and Five. The trial court's judgment entry of conviction was filed on May 11, 2021.

{¶8} On May 28, 2021, the trial court held a sentencing hearing in Greene's case. The trial court merged Counts One and Five with the State electing to proceed

on Count One for sentencing. Thereafter, the trial court ordered Green to serve a 60-month mandatory prison term under Count One. Then, the trial court determined that Greene committed his offense while out on postrelease control finding that 1,073 days remained on postrelease control. The trial court terminated his postrelease control and ordered Greene to serve the 60-month prison term under Count One plus an additional 381 days. Further, the trial court ordered Greene to serve 180 days of incarceration in the Ohio Department of Rehabilitation and Correction on Count Three and that he serve it consecutively to the term imposed in Count One. The judgment entry of sentencing was filed on the same day.

{¶9} Greene timely filed his notice of appeal on June 21, 2021, and he raises three assignments of error for our review, which we will address in the order of presentation.

### Assignment of Error No. I

**The Trial Court Erred Not Granting The Appellant's Motion To Suppress The Appellant's Refusal Of A Warrantless Search Outside Ohio's Implied Consent Statute.**

{¶10} In his first assignment of error, Greene argues that the trial court erred by denying his suppression motion as it pertains to his refusal to submit to a breath test. Specifically, Greene asserts that Ohio State Highway Patrol Trooper, Sergeant Josh Carter's ("Carter"), request for him to submit to a breath test (and Green's

subsequent refusal) constituted a warrantless search since he was not under *arrest* at the time the request was made.

*Standard of Review*

**{¶11}** "Appellate review of a decision on a motion to suppress presents a mixed question of law and fact." *State v. LaRosa*, 165 Ohio St.3d 346, 2021-Ohio-4060, ¶ 17 citing *State v. Burnside*, 100 Ohio St.3d 152, 2003-Ohio-5372, ¶ 8. The trial court serves as the trier of fact and is the primary judge of the credibility of the witnesses and the weight to be given to the evidence presented when ruling on a motion to suppress. *State v. Johnson*, 137 Ohio App.3d 847, 850 (12th Dist.2000). Therefore, when an appellate court reviews a trial court's ruling on a motion to suppress, it must accept the trial court's findings of facts so long as they are supported by competent, credible evidence. *State v. Roberts*, 110 Ohio St.3d 71, 2006-Ohio-3665, ¶ 100. "'Accepting these facts as true, the appellate court must independently determine'", as a matter of law, "'without deference to the trial court's conclusions, whether the facts satisfy the applicable legal standard.'" *Id.* quoting *Burnside* at ¶ 8. The appellate court must then review the application of the law to the facts de novo. *Burnside* at ¶ 8.

**{¶12}** There are three methods of challenging a trial court's ruling on a motion to suppress on appeal. First, an appellant may challenge the trial court's findings of fact. In reviewing a challenge of this nature, an appellate court must

determine whether the trial court's findings of fact are against the manifest weight of the evidence. *See, State v. Fanning*, 1 Ohio St.3d 19 (1982); *State v. Klein*, 73 Ohio App.3d 486 (4th Dist.1991). Second, an appellant may argue the trial court failed to apply the appropriate test or correct law to the findings of fact. In that case, an appellate court can reverse the trial court for committing an error of law. *See, State v. Williams*, 86 Ohio App.3d 37, 42 (4th Dist.1993), *overruled on other grounds*. Finally, an appellant may argue the trial court has incorrectly decided the ultimate or final issues raised in a motion to suppress. When reviewing this type of claim, an appellate court must independently determine, without deference to the trial court's conclusion, whether the facts meet the appropriate legal standard in any given case. *State v. Curry*, 95 Ohio App.3d 93, 96 (8th Dist.1994).

*Analysis*

{¶13} Here, Greene argues that the trial court incorrectly decided the ultimate issue raised in his motion to suppress. Specifically, Greene asserts that the trial court erred by not suppressing his refusal to submit to a breath test at the scene since he was not under *arrest* when Carter requested he submit to a *chemical test*. (Appellant's Brief at 5). We disagree.

{¶14} Charged with aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), OVI in violation of R.C. 4511.19(A)(1)(a), and vehicular assault in violation of R.C. 2903.08(A)(2)(b), Greene moved to suppress: any chemical

tests; observations and opinions of law enforcement officers; statements he made; and any physical evidence. (Doc. No. 28); (May 28, 2020 Tr., Vol. I, at 41). The suppression hearing revolved around whether Carter had probable cause to request that Greene submit to field sobriety tests, a breath test, and a chemical blood test. A secondary issue concerned whether Carter's request for a chemical test constituted a warrantless search in contravention of Ohio's implied consent statute. (May 28, 2020 Tr., Vol. I, at 40-45).

{¶15} Here, Green does not challenge the admissibility of his refusal to engage in the field sobriety tests at the crash scene nor does he challenge the trial court's suppression of his refusal to take a chemical blood test at the hospital. Greene's focus is on his refusal to submit to a breath test at the crash scene.

{¶16} Importantly, under the facts before us, the suppression-hearing record is *unclear* as to whether the test that Greene refused at the scene was a "breath on scene" test otherwise known as a portable breath test ("PBT") or a chemical breath test. (*See id.* at 47). At the suppression hearing, the following exchange took place between the State and Carter:

> [State]    And had you asked Mr. Greene, prior to getting the search warrant, whether he would submit to a chemical test?
>
> [Carter]    I asked him if he would give, I think, breath on scene, but that was it.
>
> [State]    Breath on scene, which would've been just a portable?

> [Carter]   No, it would've been, – I could take him in for like, a breath
> test.

(*Id.*). Depending on where we put the voice emphasis (as *readers* of this sterile transcript who cannot hear the witnesses tone, intonation, and emphasis) we could reach different conclusions as the propriety of the trial court's ruling. *See State v. Still*, 3d Dist. Marion No. 9-21-21, 2022-Ohio-242, ¶ 10 (discussing why deference is given to the fact finder who has the ability to see and hear the testimony as well as evaluate voice inflections).

{¶17} Importantly, Greene never requested the trial court to determine whether Carter's testimony as to the "breath on scene" test constituted a PBT or a chemical test under the statutory or administrative rules. Perhaps, the nature of the test was simply clear to everyone present at the suppression hearing, but on appeal, it is not. Thus, we cannot review the trial court's findings of fact to determine if they are supported by competent, credible evidence since no such finding of fact was made in the trial court's judgment entry. Although, we recognize that Crim.R. 12(F) requires the court to "state its essential findings on the record" in relation to a motion to suppress, under the specific facts and circumstances of this case, we will not say the trial court erred in this respect, given that, any ambiguity that exists is based on our view of the transcript in a vacuum. *See State v. Bracken,* 10th Dist. Franklin No. 16AP-435, 2017-Ohio-721, ¶ 21. When a trial court fails (even if such a failure is inadvertent) to make a factual finding, a reviewing court must look

directly to the record to determine if there is sufficient evidence demonstrating that the trial court's decision was legally justified and supported by the record. *See id. See also State v. Harrison,* 3d Dist. Logan No. 8-14-16, 2015-Ohio-1419, ¶ 19 quoting *State v. Jones*, 1st Dist. Hamilton No. C-130359, 2014-Ohio-3110, ¶ 10 ("Because the trial court did not make any findings of fact in its decision denying the suppression motion, we must review the record to determine whether sufficient evidence exists to support the trial court's legal decision."), citing *State v. Shields,* 1st Dist. Hamilton No. C-100362, 2011-Ohio-1912, ¶ 9, citing *State v. Brown*, 64 Ohio St.3d 476 (1992), syllabus. Accordingly, we review the record to determine the facts and then determine whether those facts satisfy the applicable legal standard.

{¶18} At trial, Carter testified

> I asked him about the field sobriety tests. Hold on, I read him Miranda, and then I asked him to do field sobriety tests again, which he said no and I asked him for urine and breath and he said no. And then he said that he was being treated like a criminal and that I had not offered him medical assistance.

(May 10, 2021 Tr., Vol. II, at 160). Greene objected to the admission of the refusal to take the breath and urine tests on the basis that Carter was testifying to a warrantless search. (*Id.*). The trial court sustained the objection as to the refusal involving the urine test, and instructed the jury to disregard that testimony.[1] (*Id.* at

---

[1] This was the first time in the course of the proceedings, including the suppression hearing, that a refusal of a urine test had been mentioned. (May 10, 2021 Tr., Vol. II, at 162-164).

161). Then, the State, the defense, and the trial court conducted a sidebar outside of the presence of the jury wherein the trial court entertained argument as to the significance of this evidence. (*Id.*). Thereafter, the trial court sustained the defense's objection to the admission of the testimony related to Greene's refusal to submit to a urine test, and the defense renewed its objection as to the admission of the evidence regarding the refusal of the breath test. (*Id.* at 163). Ultimately, the trial court permitted Carter to testify as to Greene's refusal of the breath test at the scene. (*Id.* at 165).

{¶19} Upon the conclusion of all evidence, the trial court instructed the jury as follows:

> Evidence has been introduced indicating that the Defendant was asked, but refused, to submit to a *chemical test of his breath* for the purpose of suggesting that the Defendant believed he was under the influence of alcohol. If you find the Defendant refused to submit to such tests, along with all the other facts and circumstances in evidence in deciding whether the Defendant was under the influence of alcohol. You may give such weight to such evidence as you determine proper.

(Emphasis added.) (*Id.* at 278). Notably, the defense did not raise an objection in relation to this jury instruction. (*Id.* at 245-248, 284). Thus, and based on the record before us, we find that the breath test that Greene refused at the scene was a chemical breath test.

{¶20} Indeed, evidence of a refusal to submit to chemical breath test that has been approved by the Ohio Department of Health and listed in Ohio Adm.Code

3701-53-02 is admissible evidence. *See In re A.M.I.*, 12th Dist. Warren No. CA2014-07-095, 2015-Ohio-367, ¶ 16-17. Notably, this Court has applied the Ohio Supreme Court's determination in *Maumee v. Anistik*, 69 Ohio St.3d 339, 1994-Ohio-157 that evidence regarding a refusal to submit to a chemical breath test is admissible at trial. *See State v. Williams*, 3d Dist. Logan No. 2021-Ohio-1359, ¶ 7, citing *State v. Vales*, 5th Dist. Stark No. 2019CA00061, 2020-Ohio-242, ¶ 77, citing *Anistik* at syllabus.

{¶21} Principally, the *Anistik* case dealt with the jury instructions to be given where evidence is adduced that a defendant has refused to submit to a chemical breath test involving a driver who had been *arrested* for suspected OVI. In essence, Greene is proposing that *Anistik*, does not apply to his refusal at the scene because he was not under arrest at the time he refused Carter's request. However, we find the Ohio Supreme Court's earlier ruling in *City of Westerville v. Cunningham*, 15 Ohio St.2d 121 (1968), has not been overturned by *Anistik* and allows for the admission of such evidence without regard to a defendant's arrest status at the time of the request. *See State v. Frangella*, 5th Dist. Richland No. 11CA43, 2012-Ohio-1863, ¶ 44.

{¶22} Moreover, it is reasonable to infer that evidence of a refusal can indicate to the trier of fact fear of the result and a consciousness of guilt. *Westerville* at 122; *State v. Padgett*, 1st Dist. Hamilton No. C-200327 and C-200238, 2021-

Ohio-2905, ¶ 16, citing *State v. Carnes*, 1st Dist. Hamilton No. C-140188, 2015-Ohio-379, ¶ 14 and *Westerville* at 122.

**{¶23}** After our review of the entire record and more specifically the jury instructions, it is clear that the trial court (who heard Carter testify and listened to his tone, voice inflection, and voice emphasis at the suppression hearing) interpreted that testimony to be a request for a chemical breath test.[2] And at trial, the trier of fact (i.e., the jury) was ultimately instructed by the trial court that it was permitted to consider Greene's refusal of Carter's request for a chemical breath test in addition to the testimonial evidence when deciding whether Greene was under the influence of alcohol at the time he was operating his vehicle. Therefore, because we determined the record contained sufficient facts to resolve the ambiguity, and we were able to apply the appropriate legal standard, we conclude that the trial court did not err by denying Greene's motion to suppress his refusal to submit to a chemical breath test.

**{¶24}** Accordingly, Greene's first assignment of error is overruled.

**Assignment of Error No. II**

**The Trial Court Erred In Overruling The Appellant's Objection To Testimoney [sic] Privileged Under R.C. 2317.02 And Unfairly Prejudicial Under Evid.R. 403.**

---

[2] We note that in the trial court's judgment entry addressing the suppression hearing, that the trial court analyzed cases involving chemical blood and breath tests. (*See* Doc. No. 176).

{¶25} In his second assignment of error, Greene argues that the trial court erred by overruling Greene's objections to the testimony of Cridersville Fire Department Firefighter/Paramedic, David Edwards ("Edwards"). Specifically, Greene contends that he was entitled to assert a physician-patient privilege under R.C. 2317.02(B)(1), and that Edwards testimony (although relevant) should have been excluded under Evid.R. 403(A) on the basis that it unfairly prejudiced Greene.

*Standard of Review*

{¶26} Generally, the admission or exclusion of evidence lies within the trial court's discretion, and a reviewing court should not reverse absent an abuse of discretion and material prejudice. *State v. Conway*, 109 Ohio St.3d 412, 2006-Ohio-2815, ¶ 62, citing *State v. Issa*, 93 Ohio St.3d 49, 64 (2001). An abuse of discretion implies that the trial court acted unreasonably, arbitrarily, or unconscionably. *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).

*Analysis*

{¶27} We begin by addressing Greene's statutory-privilege argument. "R.C. 2317.02(B)(1) prohibits, except in limited circumstances, a physician[, advanced practice registered nurse, or dentist] from testifying 'concerning a communication made to [him or her] * * * by a patient in that relation' or concerning [his or her] advice to a patient." *Torres Friedenberg v. Freidenberg*, 161 Ohio St.3d 98, 2020-Ohio-3345, ¶ 15. The physician-patient privilege did not exist at common law.

*State Med. Bd. v. Miller*, 44 Ohio St.3d 136, 140 (1989), citing McCormick, *Evidence*, Section 98, at 243 (3d Ed.Lawyers'Ed.1984). Thus, we construe the statutory privilege strictly against the party asserting it and apply it only to those circumstances the statute specifically prescribes. *Ward v. Summa Health Sys.*, 128 Ohio St.3d 212, 2010-Ohio-6275, ¶ 15.

**{¶28}** "The purpose of the physician-patient privilege is to encourage patients to make a full disclosure of their symptoms and condition to their physicians without fear that such matters will later become public." *State v. Richardson*, 12th Dist. Warren Nos. 2018-Ohio-4254, ¶ 24, citing *State v. Antill*, 176 Ohio St. 61, 64-65 (1964). "'Against the interest of the patient in having his condition remain confidential, must be balanced the interest of the public in detecting crimes in order to protect society.'" *Id.*, quoting *Antill* at 65.

**{¶29}** R.C. 2317.02(B) defines specific exceptions to the privilege. However, none of the listed exceptions apply to Green's case. *See* R.C. 2317.02(B)(1)(a) through (e) (listing the following exceptions: (in a civil action) if a patient gives express consent; an executor, administrator, or estate (of a deceased patient) gives express consent; if the patient files a malpractice claim against a provider, or if there are court-ordered treatment or services pursuant to a case plan or in a case filed under R.C. Chapter 2151; (in a criminal case) a patient's test/test results to determine the presence or concentration of alcohol, drugs, a combination,

a controlled substance, or metabolite in the patient's blood, breath, urine, or other bodily substance or in a criminal action against a provider; or finally, (in a civil action through Probate Court) in a will-contest). R.C. 2317.02(B) "is worded so that the privilege applies unless it is waived," and if a "situation does not meet one of the waivers expressly set forth in the statute, the privilege is not waived." *In re Miller*, 63 Ohio St.3d 99, 109 (1992). "If an individual makes statements to a physician [] for purposes *other than* diagnosis or treatment, such statements are not protected by the privilege." (Emphasis added.) *Skorvanek v. Ohio Department of Rehabilitation and Correction*, 10th Dist. Franklin No. 17AP-222, 2018-Ohio-3870, ¶ 57, citing *In re Jones*, 99 Ohio St.3d 203, 2003-Ohio-3182, ¶ 13.

{¶30} The record reveals that upon arrival at the hospital, Edwards sat down in the Emergency-medical-technician room adjacent to the emergency room (where Greene was placed). (May 10, 2021 Tr., Vol. II, at 207). Edwards was separated from Greene by glass doors and a curtain. (*Id.*). However, the glass doors were open and the curtain was closed. (*Id.*). Edwards testified that he could hear Greene yelling at someone stating "that they weren't going to draw blood on him for a drug test." (*Id.*). At trial, the defense objected to Edward's testimony on the basis that this evidence had previously been suppressed. (*Id.* at 207-209). However, the State argued that it had not been suppressed and that it did not involve a state actor. (*Id.*).

The trial court overruled that objection.[3] (*Id.*). Then, the defense objected on the basis that the testimony was a violation the Health Insurance Portability and Accountability Act ("HIPPA"), but before the trial court could rule on Greene's objection, the defense argued that Edwards's testimony was a violation of the physician-patient privilege under R.C. 2317.02(B)(1)(c). (*Id.* at 209-213). Ultimately, the trial court overruled the objection because Greene's statement was not made in confidence. (*Id.* at 213).

{¶31} Important to this discussion and based on our review of the record, it is not entirely clear who Greene was arguing with (in the emergency room) and why the conversation took place. (*Id.* at 207). Even if we were to assume without deciding that Greene was engaging in a communication with his physician (and not just *staff*) and that Edwards is an *eavesdropper* with whom Greene was unaware of at the time he was communicating, we nonetheless conclude that Greene took no reasonable steps to preserve the confidentiality of his communications. Indeed, the facts support that Greene was "yelling" so loudly that multiple individuals in the emergency-room area heard him. (May 10, 2021 Tr., Vol. I, at 144-147); (May 10, 2021 Tr., Vol. II, at 207, 229-230). Thus, this portion of Greene's second assignment of error lacks merit.

---

[3] These statements Greene made to Edwards and the hospital *staff* were never addressed specifically in Greene's motion to suppress nor was there testimony regarding the same elicited at the suppression hearing.

{¶32} Next, Greene's argues that the trial court erred by admitting the evidence of Greene's refusal (through Edwards) because it is *unfairly* prejudicial under Evid.R. 403(A). Specifically, Greene is arguing that Edwards scared Greene into refusing to submit to a routine medical test at the hospital for fear of sedation (with Fentanyl) and the admission of such statement (at trial) unfairly prejudiced him since the jury could infer he was operating a motor vehicle under the influence of alcohol. (Appellant's Brief at 11).

{¶33} Evid.R. 403(A) provides in its pertinent part that exclusion of relevant evidence is mandatory "if its probative value is substantially outweighed by the danger of unfair prejudice". Here, the record contradicts Greene's position by revealing his motivation to refuse the intravenous injection ("IV") was an effort to deter a blood test, rather than, avoid sedation. Evid.R. 403(A) goes to admissibility and not credibility, weight, or evidentiary interpretation. Evidence is not unfair simply because it is detrimental or unfavorable to one side of the case; we note the purpose of most of the State's evidence is to incriminate a criminal defendant, and is thus, prejudicial. *See State v. Skatzes*, 104 Ohio St.3d 195, 2004-Ohio-6391, ¶ 107, citing *State v. Wright*, 48 Ohio St.3d 5, 8 (1990). *See also State v. Bolden,* 3d Dist. Allen No. 1-16-58, 2017-Ohio-6931, ¶ 14.

{¶34} Based on our review of the record, we conclude that the probative value of this evidence substantially outweighed any danger of *unfair* prejudice.

Thus, its exclusion was not mandated. Accordingly, we conclude that the trial court did not abuse its discretion in its evidentiary determinations, and hence, we find no error.

{¶35} For the foregoing reasons, Greene's second assignment of error is overruled.

## Assignment of Error No. III

**The State Of Ohio Failed To Present Sufficient Evidence To Support The Conviction For R.C. 4511.19/2903.08 And The Appellant's Conviction Was Against The Manifest Weight Of The Evidence.**

{¶36} In his third assignment of error, Greene argues that his convictions are based on insufficient evidence *and* are against the manifest weight of the evidence.

*Standard of Review*

{¶37} Manifest "weight of the evidence and sufficiency of the evidence are clearly different legal concepts." *State v. Thompkins*, 78 Ohio St.3d 380, 389 (1997), *superseded by statute on other grounds*, *State v. Smith*, 80 Ohio St.3d 89 (1997). Thus, we address each legal concept individually.

{¶38} "An appellate court's function when reviewing the sufficiency of the evidence to support a criminal conviction is to examine the evidence admitted at trial to determine whether such evidence, if believed, would convince the average mind of the defendant's guilt beyond a reasonable doubt." *State v. Jenks*, 61 Ohio St.3d 259 (1981), paragraph two of the syllabus, *superseded by constitutional*

*amendment on other grounds*, *Smith* at 89. Accordingly, "[t]he relevant inquiry is whether, after viewing the evidence in a light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime proven beyond a reasonable doubt." *Id.* "In deciding if the evidence was sufficient, we neither resolve evidentiary conflicts nor assess the credibility of witnesses, as both are functions reserved for the trier of fact." *State v. Jones*, 1st Dist. Hamilton Nos. C-120570 and C-120571, 2013-Ohio-4775, ¶ 33, citing *State v. Williams*, 1st Dist. Hamilton No. C-110097, 2011-Ohio-6267, ¶ 25. *See also State v. Berry*, 3d Dist. Defiance No. 4-12-03, 2013-Ohio-2380, ¶ 19 ("Sufficiency of the evidence is a test of adequacy rather than credibility or weight of the evidence."), citing *Thompkins* at 386.

{¶39} On the other hand, in determining whether a conviction is against the manifest weight of the evidence, a reviewing court must examine the entire record, "'weigh[ ] the evidence and all reasonable inferences, consider[ ] the credibility of witnesses and determine[ ] whether in resolving conflicts in the evidence, the [trier of fact] clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Thompkins* at 387, quoting *State v. Martin*, 20 Ohio App.3d 172, 175 (1st Dist.1983). A reviewing court must, however, allow the trier of fact appropriate discretion on matters relating to the weight of the evidence and the credibility of the witnesses. *State v. DeHass*,

10 Ohio St.2d 230, 231 (1967). When applying the manifest-weight standard, "[o]nly in exceptional cases, where the evidence 'weighs heavily against the conviction,' should an appellate court overturn the trial court's judgment." *State v. Haller*, 3d Dist. Allen No. 1-11-34, 2012-Ohio-5233, ¶ 9, quoting *State v. Hunter*, 131 Ohio St.3d 67, 2011-Ohio-6524, ¶ 119.

*Sufficiency of the Evidence Analysis*

**{¶40}** Notably, Greene moved the trial court for a judgment of acquittal under Crim.R. 29(A) at the conclusion of the State's case-in-chief and renewed his motion at the conclusion of all the evidence. (*See* May 10, 2021 Tr., Vol. II, at 235-244).

**{¶41}** Greene was found guilty of all three counts in the indictment. (*Id.* at 286-289); (Doc. Nos. 184, 185, 186). Specifically, Greene was convicted of aggravated vehicular assault in violation of R.C. 2903.08(A)(1)(a), which provides that "No person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person * * * As the proximate result of committing a violation of division (A) of section 4511.19 of the Revised Code * * *".

**{¶42}** Further, Greene was convicted of OVI in violation of R.C. 4511.19(A)(1)(a), which provides: "No person shall operate any vehicle * * *

within this state, if, at the time of the operation * * * The person is under the influence of alcohol * * *."

{¶43} Finally, Greene was convicted of vehicular assault in violation of R.C. 2903.08(A)(2)(b), which provides: "No person, while operating or participating in the operation of a motor vehicle * * * shall cause serious physical harm to another person * * * Recklessly[]".

{¶44} Importantly, Greene does not dispute any of the underlying elements of any of the offenses of which he was convicted. Rather, he disputes only the issue of impairment. Thus, we need not address the finding of guilt for the offense of vehicular assault entirely or any other element of the findings of guilt for the offenses of aggravated vehicular assault (under Count One) or OVI (under Count Three), other than, whether he was under the influence of alcohol at the time he was operating the vehicle.

{¶45} In his sufficiency-of-the-evidence challenge, Greene argues that a rational trier of fact could not have found that he operated a motor vehicle under the influence of alcohol. (Appellant's Brief at 12). Greene contends that his convictions are based on insufficient evidence because the State presented several witnesses who testified against him using "magic words".

{¶46} Here, the jury heard the testimony of several different witnesses on behalf of the State as to evidence of Greene's impairment before, during, and after

the crash. First, the State called Ohio State Highway Patrol Trooper Joe Nartker ("Nartker") to testify. (May 10, 2021 Tr., Vol. I, at 22). Nartker testified that he was working the midnight shift on July 6, 2019 in Auglaize County, Ohio when he was dispatched in response to a two-vehicle crash. (*Id.* at 26-27, 30). When Nartker approached Greene (walking on the shoulder of the roadway talking on his cellphone), he saw a small cut on Greene's head, but Greene told him he was not injured. (*Id.* at 28-29). Nartker asked Green to sit in the rear seat in his cruiser to fill out a crash statement.[4] (*Id.* at 29-30, 32). Nartker testified that he noticed the odor of alcohol on Greene while he was entering his patrol car, and that he continued to smell the odor of alcohol inside the patrol car. (*Id.* at 32).

{¶47} Then, the State presented witness Lauren Scarberry ("Scarberry"). (*Id.* at 97-98). Scarberry testified that while pulling off to the right side of the road, she witnessed the crash, which occurred 30 feet in front of her. (*Id.* at 98). Scarberry approached Greene who told her to leave the crash scene telling her that "[she] didn't need to be there, [she could] go ahead and leave". (*Id.* at 102). Scarberry testified that "[h]e was definitely drunk. He was kind out of it." (*Id.*). She testified that "he reeked like alcohol", appeared disoriented, and had glassy eyes. (*Id.* at 103, 108, 111).

---

[4] Nartker testified that Greene's answer to his crash statement was "Traveling down highway home to Dayton, car was stopped in front of me. I hit my brakes and tried to swerve." (May 10, 2021 Tr., Vol. I, at 31); (State's Ex. 1).

**{¶48}** Next, the State called Ohio State Highway Patrol Trooper Sergeant Josh Carter ("Carter") to testify. (*Id.* at 151-152). Carter testified that he was dispatched to the scene (with a trooper-in-training Travis Ricker ("Ricker")) to assist other law enforcement officers at the scene. (May 10, 2021 Tr., Vol. II, at 152-154). Upon arrival, Carter testified that Nartker indicated he smelled the odor of alcohol on Greene. (*Id.* at 154). Carter opened the backdoor of Nartker's patrol car, and he (Carter) smelled a strong odor of alcohol from the interior of the vehicle. (*Id.* at 155-156). Carter testified that, once Greene got out of Nartker's vehicle, he could smell the strong odor of alcohol coming from Greene's person. (*Id.* at 157). Carter noticed that Greene had a head injury with dried blood and was having issues with his balance–staggering. (*Id.* at 157-158). Carter asked Greene if he was okay, and "[Greene] said he was fine." (*Id.* at 158). According to Carter, after walking with Greene observing his lack of balance and detecting the strong odor of alcohol, he suspected Carter was an impaired driver. (*Id.* at 159). After determining no condition prevented him from taking the SFST existed, Carter asked Greene to submit to the SFST, which Greene refused. (*Id.* at 159-160). Carter then asked Greene to submit to a breath test that he refused. (*Id.* at 160). Carter observed Greene to have glassy, bloodshot eyes and his face was flush. (*Id.* at 165).

**{¶49}** Then, the State presented the testimony of Auglaize County Sheriff's Department Deputy Samuel Blank ("Blank"). (*Id.* at 184). Blank testified that he

was dispatched to assist the Ohio State Highway Patrol with triage because both lanes of Interstate 75 (Southbound) were shut down. (*Id.* at 187). Blank testified that he had contact with Greene and noticed a bleeding head injury. Blank testified while he was trying to get Greene off his cellphone to seek medical assistance, he noticed the odor of alcoholic beverage on Greene. (*Id.* at 191). Blank escorted Greene to the emergency-medical-services vehicle ("EMS") where Greene appeared frustrated and uncooperative with the emergency-medical technicians refusing treatment. (*Id.*).

{¶50} Next, the State presented Cridersville Fire Department ("CFD") Firefighter/Paramedic, David Edwards ("Edwards"). (*Id.* at 198). Edwards testified that he was dispatched to the crash scene for the second call. (*Id.* at 199-201). Edwards performed three neurological assessments on Greene during the course of his transport. (*Id.* at 203-204). All three neurological assessments were normal with no indication of a concussion. (*Id.* at 204). Edwards testified that he smelled the odor of alcohol on Greene in the ambulance, but that the odor was faint. (*Id.* at 206).

{¶51} The State's final witness was CFD Firefighter/Paramedic driver, Gregory Kohler ("Kohler"). (*Id.* at 219-220). Kohler testified that he was dispatched to the crash scene with the first EMS. (*Id.* at 220-223). Kohler testified that Greene did not have any pain and refused medical treatment. (*Id.* at 223-225). Kohler testified that Greene smelled like alcohol. (*Id.* at 225).

**{¶52}** Indeed, the record before us and the evidence detailed above directly contradicts Greene's argument. Even so, Greene opines that the evidence is insufficient to establish that he was impaired and not suffering from a head injury resulting in similar symptoms as someone who may be under the influence of alcohol. And, Greene also asserts that the variations in witnesses' testimonies as to the odor of alcohol about his person and the presence of a head injury should have led the jury to reach a different conclusion. To us, Greene is arguing the issue of credibility of the witnesses. The credibility of witnesses and weight of the evidence is primarily the role of the trier-of-fact. *State v. Frazier*, 115 Ohio St.3d 139, 2007-Ohio-5048, ¶ 106, citing *State v. DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. In this case, the jury had such a role. In assessing the sufficiency of the evidence, we do not resolve evidentiary conflicts or assess the credibility of witnesses. Instead, we are to determine if any rational trier of fact could have found the essential elements of each offense beyond a reasonable doubt when viewing the evidence in a light most favorable to the prosecution. *Jenks*, 61 Ohio St.3d 259, at paragraph two of the syllabus; *Jones*, 2013-Ohio-4775, at ¶ 33.

**{¶53}** Accordingly, viewing the evidence in a light most favorable to the prosecution, we conclude that a rational trier of fact could conclude beyond a reasonable doubt that Greene was operating a motor vehicle under the influence of alcohol at the time he committed the offenses of aggravated vehicular assault and

OVI. As such, Counts One and Three of Greene's findings of guilt are based on sufficient evidence.[5]

**{¶54}** Having concluded that Greene's convictions are based on sufficient evidence, we address Greene's arguments that his offenses are against the manifest weight of the evidence.

*Manifest Weight of the Evidence Analysis*

**{¶55}** Similar to his sufficiency-of-the-evidence arguments, Greene argues that the testimonial evidence presented by the State had too many variations and inconsistencies causing those testimonies to lack credibility and reliability. In particular, Greene contends that the witness testimonies as to his impairment and the presence of a head injury (as argued in his sufficiency assignment of error) were against the manifest weight of the evidence to establish that Greene committed the offenses of aggravated vehicular assault and OVI.

**{¶56}** "Although we review credibility when considering the manifest weight of the evidence, the credibility of witnesses is primarily a determination for the trier of fact." *State v. Banks*, 8th Dist. Cuyahoga No. 96535, 2011-Ohio-5671,

---

[5] Moreover, even if we had not already declined to address Greene's sufficiency-of-the-evidence argument as to his finding of guilt for the offense of vehicular assault (under Count Five) since impairment is not an element of that offense, we would, nevertheless, decline to address any sufficiency-of-the-evidence and manifest-weight-of-the-evidence arguments related to Count Five on the basis that the record reveals that the finding of guilt as to Count Five was merged with finding of guilt for Count One for the purposes of sentencing (with the State electing to proceed to sentencing on Count One), and since we concluded that Count One is based on sufficient evidence, error, if any, as to Count Five is harmless beyond a reasonable doubt. (*See* Doc. No. 201). *See also State v. Adkins*, 3d Dist. Allen No. 1-19-71, 2020-Ohio-6799, ¶ 40 (citations omitted) (sufficiency of the evidence); *State v. Kunzer*, 3d Dist. Crawford No. 3-18-16, 2019-Ohio-2959, ¶ 38-39 (citations omitted) (manifest weight of the evidence).

¶ 13, citing *DeHass*, 10 Ohio St.2d 230, at paragraph one of the syllabus. "The trier of fact is best able 'to view the witnesses and observe their demeanor, gestures[,] and voice inflections, and use these observations in weighing the credibility of the proffered testimony.'" *Id.*, quoting *State v. Wilson*, 113 Ohio St.3d 382, 2007-Ohio-2202, ¶ 24, citing *Seasons Coal Co., Inc. v. Cleveland*, 10 Ohio St.3d 77, 80-81 (1984).

{¶57} Here, Greene does not attack a specific witnesses' credibility, rather, he argues that because there were discrepancies in the testimonies that should have weighed heavily against his convictions. Notwithstanding his arguments, "we are mindful of the jury's 'superior first-hand perspective in judging the demeanor and credibility of witnesses.'" *State v. Suffel*, 3d Dist. Paulding No. 11-14-05, 2015-Ohio-222, ¶ 33, quoting *State v. Phillips*, 10th Dist. Franklin No. 14AP-79, 2014-Ohio-5162, ¶ 125, citing *DeHass* at paragraph one of the syllabus. Indeed, the jury heard the witnesses' testimonies and was in the best position to determine whether the testimonies (as to discrepancies and variations) were credible.

{¶58} Moreover, the evidence that we summarized in our sufficiency-of-the-evidence analysis (supporting Greene's convictions) is weightier than the evidence against it, and thus, we will not say that the evidence weighs heavily against Greene's convictions. Consequently, we do not conclude that the jury clearly lost

its way, which created such a manifest miscarriage of justice that Greene's convictions must be reversed and a new trial ordered.

{¶59} Accordingly, Greene's assignment of error is overruled.

{¶60} Having found no error prejudicial to the appellant herein in the particulars assigned and argued, we affirm the judgment of the trial court.

*Judgment Affirmed*

**MILLER and SHAW, J.J., concur.**

**/jlr**